## 11617

### WIGGINS v. POSTAL TELEGRAPH COMPANY

#### (125 S. E., 568)

1. TELEGRAPHS AND TELEPHONES—HOLDER OF INVALID CONTRACT FOR FUTURE DELIVERY COULD NOT RECOVER DAMAGES FOR NONDELIVERY OF TELEGRAM.—Holder of contract for future delivery of cotton, void under Civ. Code 1922, §§ 5165, 5166, because actual delivery was not intended, could not recover damages sustained on telegraph Company's failure to deliver telegram instructing brokers to sell.

2. GAMING—BURDEN OF PROVING PARTIES TO CONTRACT FOR FUTURE DELIVERY OF COTTON INTENDED ACTUAL DELIVERY IS ON PARTY CLAIMING BENEFIT OF CONTRACT.—Burden of showing that parties to contract for future delivery of cotton, void under Civ. Code 1922, §§ 5165, 5166, unless actual delivery was intended, contemplated actual delivery is on party claiming benefit of contract.

3. CONTRACTS—STATE COURT NOT REQUIRED TO RECOGNIZE VALIDITY OF CONTRACT MADE ELSEWHERE IN VIOLATION OF STATE LAWS.—There is no principle of law based on comity or interstate commerce transactions requiring a State Court to recognize the validity of a contract made in another State, which under its laws is declared to be against public policy, immoral, and void.

Before BOWMAN, J., Orangeburg, June, 1923. Affirmed.

Action by J. H. Wiggins against the Postal Telegraph Co. Judgment for defendant, and plaintiff appeals.

*Messrs. Wolfe & Berry,* for appellant, cite: *Telegraph companies common carriers:* Const. 18:95, Art. IX, Sec. 3; 110 S. C., 233. *Statutory defense must be pleaded:* 16 Enc. Pl. & Pr., 549. *New matter:* Code Civ. Proc., Sec. 410. *Transaction involved was lawful prior to anti-future trading statute of* 1883: 18 Stat., 454; 14 S. C., 621. *Transaction excepted from anti-future trading act:* 25 Stat., 614; Code 1922, Vol. 2, Sec. 127; Code 1922, Vol. 3, Secs. 5165–7. *Interstate commerce:* Fed. Const., Art. I, Sec. 8, Subdivision 3. *Question of fact for jury:* 98 S. C., 280.

*Messrs. Raysor, Moss & Lide,* for respondent, cite: *Gambling transaction:* 84 N. J. L., 63; 11 Wheat., 258; 73 S. C., 1; 20 S. C., 430; 45 S. C., 344. *Case at bar not excep-*

*tion to general rule:* 9 Cyc., 550; 72 S. C., 35; 50 S. C.,
537; 68 S. C., 241; 2 Kent., 458; 19 S. C., 587; 3d A. & E.
Enc. L., 561. *Burden on plaintiff to show cause of action
did not arise out of violation of gaming laws:* Code 1922,
Vol. 3, 5165–6; 54 S. C., 382; 50 S. C., 542; 88 S. C., 572;
98 S. C., 279.

December 4, 1924.

The opinion of the Court was delivered by MR. JUSTICE
COTHRAN.

This is an action for $1,000 damages, alleged to have re-
sulted from the failure of the defendant to transmit and de-
liver a certain telegram committed to it by the plaintiff on
November 9, 1921, for transmission and delivery to Rose
& Son, brokers, in New York City, directing them to *sell*
for account of the plaintiff 50 bales of cotton, January, 1922,
delivery.

It appears from the evidence offered by the plaintiff, the
defendant offering none, that he had at that time, in storage
in Augusta, Ga., 350 bales of spot cotton, and that he had
at some time prior to November 9, 1921, *bought* through
Rose & Son, 90 bales of cotton, January, 1922, delivery.

On the morning of November 9, 1921, believing that the
government report upon the cotton situation, which was
due to be issued at 11 o'clock on that day, would be *bearish,*
the plaintiff at his home at Holly Hill, S. C., wired Rose
& Son to sell 50 bales of his outstanding January contract
of 90 bales. This telegram appears to have gone through
promptly and to have been complied with by Rose & Son.
That left him with 40 bales of his January *bought* contract.
The plaintiff then went from his home to Orangeburg, and
when the government report came out at 11 o'clock, that
day, it was as he had anticipated, *bearish;* he then sent the
telegram in question directing Rose & Son to *sell* 50 bales
for January delivery. If this latter telegram had been
reasonably delivered, and his order complied with, the re-

sult would have been that the 40 bales of his January *bought* contract, remaining after 50 bales had been sold under his previous telegram, would have been closed out, leaving him with ten bales of *sold* January cotton.

For some unexplained reason this second telegram was not transmitted and delivered, the result being that the plaintiff continued to be liable upon the 40 bales of his January *bought* contract, and that a *sale* of the ten bales was not consummated.

The plaintiff testified that if the telegram in question had been delivered, he would have been saved a loss of $973.98. It is impossible to tell from the evidence whether this loss is claimed upon the 40 bales which were unsold, or upon the 350 bales on storage in Augusta; and, if upon either, there is not a single fact, beyond his bald statement of loss, from which the amount of loss could be determined.

The plaintiff's claim, as we understand it, is that if the telegram which was filed for transmission at 11:04 a. m., had been reasonably delivered, Rose & Son would have sold 50 bales against the 40 bales, before the market declined by reason of the government report; that, not having received the telegram and the market having later in the day declined, the 40 bales were closed out at a loss of about $10.00 per bale. The evidence is singularly barren of details from which this conclusion could be arrived at. There is no evidence of the price at which the January contract was bought, nor of the opening price on November 9, 1921, nor of the decline on that day, nor of the price at which the 40 bales were closed out. There is nothing in the evidence to show that the alleged loss of $973.98 was upon the spot cotton in Augusta. It was *bought* cotton as well as the 40 bales on the January contract. There is no detailed statement of what became of it, other than that it was sold by his broker in Augusta; when or at what price does not appear; nothing from which the loss could be attributed to that spot cotton.

We think, therefore, that if the plaintiff sustained any loss at all it was upon the 40 bales *bought* contract of January, 1922, and that it is perfectly clear from the plaintiff's own testimony that that contract offended the law of this State against gambling in cotton futures. Upon his cross-examination this appears:

"Q. That is gambling pure and simple? A. Yes, sir. * * *

"Q. (by the Court) Ain't that speculation? A. Yes, sir.

"Q. Gambling? A. Yes, sir.

"Q. That is speculation? A. Yes, sir.

"Q. That is gambling pure and simple? A. Yes, sir; termed gambling, so hold it that way."

Under the statute law of this State (Civil Code of 1922, Vol. 3, §§ 5165 and 5166), a contract for the future delivery of cotton is void unless both parties at the time intended actual delivery, the burden of showing which is upon the party claiming the benefit of such contract. *Gist v. Telegraph Co.,* 45 S. C., 344; 23 S. E., 143; 55 Am. St. Rep., 763, and cases cited in the note to Section 5165. In the case at bar the plaintiff not only failed to establish the element of legality in the contract, but distinctly admitted the contrary.

We know of no principle of law based upon comity of interstate commerce transactions, which would require a State Court to recognize the validity of a contract which, under its laws, is declared to be against public policy, immoral and void. *Association v. Rice,* 68 S. C., 241; 47 S. E., 63; 2 Kent, Comm., 458. *Thornton v. Dean,* 19 S. C., 587; 45 Am. Rep., 796; 3 A. & E. Enc. Law, 561.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES WATTS, FRASER and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.