PEOPLE, ex rel. WAYNE PROSECUTING ATTORNEY, v. TATE.

1. Nuisance—Gaming—Abatement.
   Decree of trial court in suit to abate a nuisance and confiscate car used in gambling operations, whereby car was impounded for five months and owner restrained from loaning it to party using it when it was seized, is affirmed (2 Comp. Laws 1929, § 9093 et seq.).

2. Costs—Abatement of Nuisance—Gaming.
   No costs are allowed in suit to abate a nuisance and confiscate a car used in gambling operations (2 Comp. Laws 1929, § 9093 et seq.).
   Boyles, C. J., and Starr, J., dissenting.

Appeal from Wayne; Brennan (Vincent M.), J. Submitted June 11, 1943. (Docket No. 93, Calendar No. 42,427.) Decided October 11, 1943. Rehearing denied November 29, 1943.

Bill by people of the State of Michigan, on relation of William E. Dowling, Wayne County Prosecuting Attorney, against Edward R. Tate to abate a nuisance and to sell an automobile. Bill dismissed. Plaintiff appeals. Affirmed.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *William E. Dowling,* Prosecuting Attorney, and *Harold Helper,* Assistant Prosecuting Attorney, for plaintiff.

*Oscar E. Liggett,* for defendant.

BUSHNELL, J.   This is an appeal by the people from a decree dismissing a bill of complaint filed against defendant, Edward R. Tate, under Act No. 389, Pub. Acts 1925 (2 Comp. Laws 1929, § 9093 *et seq.* [Stat. Ann. § 18.901 *et seq.*]). In their bill of complaint the people sought to confiscate a motor vehicle which was used in connection with gambling, similar to that described in *People* v. *Elliott,* 74 Mich. 264 (3 L. R. A. 403, 16 Am. St. Rep. 640).

The people produced a police officer who, while testifying as to the arrest of the occupant of the car and the finding of gambling paraphernalia therein, was interrupted by the court who asked the prosecutor if he had any proof of guilty knowledge on the part of defendant, it having appeared the car was not at the time being used by the owner.   When informed that such proof was neither available nor required, the court indicated that it was not necessary to proceed with the case. The prosecutor, however, insisted upon his right to present testimony.

After the close of the testimony, the trial judge said in part:

"In this case, this defendant has been deprived of the use of his car from September 19, 1942, to

February 17, 1943. It seems to me that is punishment enough. I think it would be entirely unreasonable and improper for this court now to order the sale of the car and the proceeds turned over to the State of Michigan. * * *

"In the case at bar a decree may be entered impounding the car of the defendant for the period from September 19, 1942, to February 17, 1943, at 12:06 p. m., and also an injunction may be issued against the defendant restraining him from hereafter loaning his car to Barber Thomas."

The principal question presented by this appeal is whether that portion of Act No. 389, Pub. Acts 1925, which provides for the forfeiture of any vehicle used for gambling is mandatory or permissive. Although the court divided in *People, ex rel. Wayne Prosecuting Attorney,* v. *Bitonti, ante,* 115, a recent case involving the same act, the court was in agreement that the statute obviates the necessity of proof of knowledge. Notwithstanding our holding in the *Bitonti Case,* we must conclude, in the light of *People, ex rel. Attorney General,* v. *Holschuh,* 235 Mich. 272, that the trial judge did not commit error in exercising his judicial discretion and in refusing to direct a confiscation and sale of the vehicle.

Mr. Justice BOYLES has written for reversal and decreeing that the nuisance use of defendant's automobile be abated by its sale. We are in accord that there was a nuisance use of defendant's automobile; and the circuit judge so held. We differ only on this issue: Does the record show that the trial judge did not properly abate the nuisance use of the automobile?

It is possible that if the trial court had ordered sale of the automobile and confiscation of the proceeds, this court might have affirmed such a decree.

But it does not follow that because the trial court decreed abatement by means other than a sale, reversible error was committed. In the judgment of the trial court the impounding of defendant's car for several months, supplemented by the court's injunction preventing defendant "from hereafter loaning his car to Barber Thomas" constituted an effective abatement of the nuisance use of the automobile. This record does not disclose that in so doing the trial judge abused his discretion or did not dispose of the issue of abatement within the terms of the statute which (when properly construed—see *People, ex rel. Attorney General,* v. *Holschuh,* 235 Mich. 272) does not command sale of an automobile when used as in the instant case. Instead, the court, if reasonably essential to abatement, *may* order sale of such vehicle. We find no good reason for disturbing that portion of the trial judge's decree by which he abated the nuisance use of the automobile in the instant case.

The decree is affirmed, but without costs.

NORTH and WIEST, JJ., concurred with BUSHNELL, J. CHANDLER, BUTZEL, and SHARPE, JJ., concurred in the result.

BOYLES, C. J. The decree dismissing the bill of complaint should be set aside. The reasoning announced by the court, early in the hearing, for dismissing the bill, as then stated by the court, was as follows:

"*The Court*: Let me ask you this: Have you any proof that the defendant in this case, Tate, had guilty knowledge—

"*Mr. Helper* (Interrupting): No.

"*The Court:*—that Thomas was engaged in the gambling business?

"*Mr. Helper*: No. I do not have such proof, and the statute does not require it.  *  *  *

"*The Court*: I don't think there is much use in arguing a point which, to me, with all due respect to the prosecution, is nonsensical. I am ready to hold, as a matter of law, that, before an automobile can be forfeited, there must be some showing, first, that it was actually used for an illegal purpose; second, that the owner of the car had some guilty knowledge, or had some reason to suspect that it was being used improperly."

It is true that the same reason was not announced at the conclusion of the hearing. The learned circuit judge, at the conclusion of the hearing, announced that the fact that the defendant had been deprived of the use of his car for about five months was "punishment enough." Since the decree was entered, this court, in *People, ex rel. Wayne Prosecuting Attorney,* v. *Bitonti, ante,* 115, has held that the statute (Act No. 389, § 9, Pub. Acts 1925 [2 Comp. Laws 1929, § 9101 (Stat. Ann. § 18.909)]) obviates the necessity of proving guilty knowledge on the part of the owner of the automobile, and that the failure of the evidence to support an allegation to that effect is not fatal to the plaintiff's case.

The court evidently found that the use of defendant's automobile constituted a nuisance within the meaning of the statute, because the decree provides:

"That the nuisance complained of in the bill of complaint be and it is hereby abated."

However, the court declined to abate the nuisance by a sale as the statute provides.

This is a chancery case, and it seems necessary to point out again that we hear chancery cases *de novo*. I cannot agree with Mr. Justice BUSHNELL that the issue is whether the statute is mandatory or per-

missive. The bill of complaint is filed to abate a nuisance, declared so by statute. Do the facts establish a nuisance? Nor is this a matter as to whether the court below abused its discretion, as we understand the use of this expression. Under our practice in chancery cases, we are to review this record to determine whether there was a nuisance and whether it should be abated, all in accordance with the applicable statute law. In the light of our decision in the *Bitonti Case, supra,* and on a review of the record in this case, a decree should be entered in this court declaring and abating the nuisance by a sale in accordance with the statute.

In the *Bitonti Case,* on a statement of facts almost identical (with one exception) with the facts in the instant case, the decree of the lower court abating the nuisance and ordering the sale of the motor vehicle was affirmed here by an equally divided court. While we unanimously agreed that proof of knowledge of the use of the vehicle for gambling purposes was not necessary, we disagreed on the issue as stated by Mr. Justice BUSHNELL, who wrote the prevailing opinion for affirmance, as follows, p. 120:

"I cannot agree with defendant's position 'that proof of a single instance of a prohibited use was *not* sufficient to justify a finding that the vehicle was a nuisance.'"

On that issue alone, Mr. Justice CHANDLER wrote for reversal, as follows, p. 119:

"Defendant also claims that proof of a single instance of a prohibited use was not sufficient to justify a finding that the vehicle was a nuisance. With this position, we agree. A nuisance involves the

idea of repetition or continuity, and is not to be predicated upon proof of a single isolated prohibited act.''

On that issue we were divided. In the *Bitonti Case,* only a single instance of the use of the vehicle was shown. The proofs are more ample in the case at bar. The defendant admitted that Thomas had borrowed the car from him several times. He was evasive in answering whether he had heard talk about the numbers game, in Thomas' barber shop, or whether he had heard anybody talk to Mr. Thomas about this gambling racket. When Thomas was arrested and subsequently charged with violating the gambling law, the police had been watching him for three or four days, found him picking up mutuel tickets from various places, he had been seen operating this same automobile before and had been using it for gambling purposes for three days, before he was arrested. The police saw him stop at various places, for three days, using the same automobile; he claimed he rented the car from Mr. Tate at $1 a day, and admitted that whenever the police got on to that car he would rent a car from some other fellow; that he had been in the business for some time. Thomas and the defendant had known each other several years and had lived together for about a year and a half. Tate was evasive as to how many times he had let Thomas take his car, but admitted that any time Thomas had his car it was with permission. He testified:

''I never asked Mr. Thomas how many miles he was going to drive my car. I didn't care as long as he got back in time for me to go to work. He bought gasoline and he would use it. He didn't have to pay me anything to use the car; he had the use of my car.''

This is considerable more than proof of a single use of defendant's automobile for gambling purposes. It is proof of a continuous use. The issue on which we differed in the *Bitonti Case* is not before us in the case at bar. We do not have here an instance of the single use of an automobile to transport material used for gambling purposes, on one occasion only, and without other testimony. It is a fair deduction from the defendant's own testimony that Thomas used the defendant's automobile more or less continuously, with his permission.

Due to the peculiar nature of gambling known as the numbers game, the confiscation of an automobile used in that form of gambling should not be considered a precedent for similar action in other circumstances. This form of gambling could not be carried on with reasonable success without the use of an automobile. The "pickup" man for this form of gambling necessarily goes from place to place to operate the business. The policy or bet slips are written in the streets, gasoline stations, barber shops, anywhere. After the tickets are written, the "pickup man" goes from place to place, collects the tickets and takes them to the gambling establishment. They are there examined, the winning numbers are determined, the amount of the pay-off to a winner is figured out, and the pay-off money then taken by the pickup man back to the one who wrote the ticket, and thence it goes to the one who made the bet. The statute (2 Comp. Laws 1929, § 9093 [Stat. Ann. § 18.901]) declares any vehicle used for the purpose of gambling to be a nuisance, and Act No. 389, § 12, Pub. Acts 1925 (2 Comp. Laws 1929, § 9104 [Stat. Ann. § 18.912]), provides that any vehicle found to be a nuisance may be confiscated and sold. The practice of borrowing, renting, or using a different automobile from day to day, the owner

claiming to be innocent of the purpose of its use, is adopted to effectively hinder the enforcement of the law against this form of gambling. On the record before us, and under the circumstances of this case, a nuisance use of the automobile was fairly established and should be abated in accordance with the statute. The case of *People, ex rel. Attorney General,* v. *Holschuh,* 235 Mich. 272, is readily distinguishable from the instant situation, and does not control. In that case, this court merely held that furniture and contents of a building used in violating the prohibition law might be seized and sold, but refused to go beyond that and uphold the seizure and sale of all of the contents of the building regardless of whether unlawfully used or not.

Another question is presented. In the case at bar, certain hearsay testimony was received without objection by the defendant, and later disregarded and stricken out by the court. The testimony is in the record although not taken separately. In *State, ex rel. Attorney General,* v. *Robinson,* 250 Mich. 99, Mr. Justice WIEST, writing for the court on the same question (syllabus 6) held:

"Where, in proceedings under Act No. 389, Pub. Acts 1925, to abate nuisance in apartment building containing 50 apartments, nuisance use was clearly established, Supreme Court may, in aid of justice, consider hearsay testimony offered by the people limiting nuisance use to one apartment, although it was stricken on objection of defendant, unless he still wants it excluded and takes consequence of having entire building closed instead of particular one so identified."

If we are to conform to the result reached in the *Bitonti Case,* the decree of dismissal must be set aside. This case having established more than a single instance of a prohibited use of the automo-

bile, I am in accord with the conclusion reached by Mr. Justice BUSHNELL in the *Bitonti Case, supra,* as follows:

"I feel that the conclusion reached by Mr. Justice CHANDLER has the effect of nullifying a proper legislative enactment which, as stated in his opinion, 'is clear and unambiguous.'

"It should be remembered that we are reviewing a decree in chancery and this is a hearing *de novo.*"

The case should be reversed for entry of decree that the nuisance be abated by sale under the statute, and remanded for further proceedings in accordance herewith. No costs awarded.

STARR, J., concurred with BOYLES, C. J.