STATE, *ex rel.* WASHTENAW COUNTY PROSECUTING
ATTORNEY, *v.* WESTERN UNION TELEGRAPH COMPANY.

1. GAMING—NATURE OF BET—OFFER AND ACCEPTANCE.

  A bet, like an ordinary contract, involves a concurrence of wills;
  hence, there must be an offer and acceptance thereof in ac-
  cordance with its terms.

2. SAME—OFFER AND ACCEPTANCE—INTERSTATE BETTING.

  An offer to bet telegraphed by a person in this State to an offeree
  in another State and there accepted by him by telegraph effects
  a bet in the other State.

3. SAME—BETS—OFFER AND ACCEPTANCE.

  A bet is made at the time and place where the offer of it is
  accepted.

4. SAME—PARTICIPATION BY TELEGRAPH COMPANY—PLEADING—STAT-
  UTES—COMMON LAW.

  Averments of bill that 2 offices of defendant telegraph company
  were used to aid unlawful gambling transactions failed to state
  a cause of action for the injunctive abatement of a nuisance

---

REFERENCES FOR POINTS IN HEADNOTES

[2, 3] 12 Am Jur, Contracts § 51.
[3] 12 Am Jur, Contracts § 37.
[4, 6, 17] 39 Am Jur, Nuisances § 146 *et seq.*
[4, 6, 17] Right to enjoin threatened or anticipated nuisance. 7 ALR
  749; 26 ALR 937; 32 ALR 724; 55 ALR 880.
[7] 28 Am Jur, Injunctions § 148 *et seq.*
[8] 24 Am Jur, Gaming and Prize Contests § 45.
[8] Criminal responsibility of one who furnishes instrumentality of
  a kind ordinarily used for legitimate purposes, with knowledge
  that it is to be used by another for criminal purposes. 108 ALR
  331.
[10, 12, 13, 15] 17 Am Jur, Discovery and Inspection §§ 25, 30.
[11, 13, 14] 58 Am Jur, Witnesses § 36 *et seq.*
[12] 23 Am Jur, Forfeitures and Penalties § 55.
[13, 14] 58 Am Jur, Witnesses §§ 50, 57.
[16, 17] 17 Am Jur, Discovery and Inspection §§ 2, 10.
[18] 3 Am Jur, Appeal and Error § 246 *et seq.*
[19] 14 Am Jur, Costs § 91.

under pertinent statute or to abate a nuisance at common law, where indicated participation was in acceptance of money bets on horse races, for transmission to out-of-State addresses and transmission of winnings to local bettors within the county, since the betting referred to was effected out of the State (CL 1948, § 692.251 *et seq.*).

5. EQUITY—PLEADING—GENERALITIES—CONCLUSIONS—AMENDMENT.

Conclusions and generalities unsupported by any statement of the facts or the nature of the transactions upon which they are based should be stricken from bill of complaint upon defendant's motion so to do or bill dismissed in part so as to eliminate them, where plaintiff made no offer to amend to supply the defect.

6. GAMING—PADLOCK PROCEEDINGS—PLEADING—TELEGRAPH COMPANY'S PARTICIPATION IN ILLEGAL GAMBLING.

Allegation that defendant telegraph company aided gambling by acceptance of money bets on horse races for transmission to out-of-State addresses and transmitted winnings to local bettors within the county in which padlock proceedings were instituted aided gambling or entered into gambling conspiracies did not aver conduct of illegal gambling under padlock statute nor establish a nuisance enjoinable at common law (CL 1948, § 692.251 *et seq.*).

7. INJUNCTION—COMMISSION OF A CRIME—NUISANCE—INTERFERENCE WITH ANOTHER.

Equity will not enjoin the commission of a crime independent of the element of nuisance or interference with the property or pecuniary rights of another.

8. GAMING—POSSESSION OF GAMBLING DEVICES—MONEY FOR TRANSMISSION FOR OUT-OF-STATE BETS.

Allegations that defendant telegraph company's acceptance of money bets on horse races for transmission to out-of-State addresses and transmission of winnings to local bettors within the county failed to aver a case of gambling within the defendant's offices or the possession of anything which may not lawfully be possessed (CL 1948, § 692.251 *et seq.*).

9. SAME—POSSESSION OF GAMBLING DEVICES—MONEY—INTERSTATE COMMERCE—PADLOCK STATUTE.

The mere possession of gambling devices, money, or paraphernalia for transportation in interstate commerce does not subject the carrier to the padlock statute as to its property used therefor (CL 1948, § 692.251 *et seq.*).

10. DISCOVERY—CONSTITUTIONAL LAW—SELF-INCRIMINATION.

   The protection against self-incrimination afforded by the Constitution bars a court of equity from entertaining a bill for a discovery to aid the promotion or defense of any suit which is not purely of a civil nature (Const 1908, art 2, § 16).

11. CRIMINAL LAW—SELF-INCRIMINATION—COMMON LAW.

   It is against the genius of the common law to compel a party to accuse himself.

12. EQUITY—ENFORCEMENT OF PENALTIES OR FORFEITURES.

   It is against the general principles of equity to aid in the enforcement of penalties or forfeitures.

13. DISCOVERY—SELF-INCRIMINATION.

   A bill for discovery cannot be maintained, where the facts upon which discovery is sought are such as would tend to criminate the defendant, since by such indirection that may not be accomplished which could not be required of defendant to be disclosed by him on the witness stand (Const 1908, art 2, § 16).

14. CRIMINAL LAW—SELF-INCRIMINATION.

   A defendant may refuse to answer, not only as to facts directly criminating him, but as to any fact which might form a link in the chain of evidence establishing his liability to punishment, penalty or forfeiture (Const 1908, art 2, § 16).

15. DISCOVERY—CRIMINAL PROSECUTIONS.

   Discovery will not be permitted in aid of criminal prosecutions or penal actions, but only in cases purely of a civil nature.

16. SAME—ANCILLARY NATURE OF REMEDY.

   A bill for discovery is in aid of a claim at law and is wholly an ancillary proceeding and if the asserted claim itself is invalid the bill for discovery must necessarily fall.

17. NUISANCE—ABATEMENT—DISCOVERY.

   Order for discovery was improperly entered in aid of bill to abate a nuisance, where averments as to nuisance were insufficient to entitle plaintiff to injunctive relief sought.

18. APPEAL AND ERROR—RELIEF—ABATEMENT OF NUISANCE—DISMISSAL OF BILL.

   Dismissal of bill to abate a nuisance will not be ordered by Supreme Court, where such relief is first sought in defendant's brief on appeal and not by motion for such purpose in the court below, notwithstanding it would appear that averments of bill were insufficient to entitle plaintiff to such relief.

19. COSTS—PUBLIC QUESTION—ABATEMENT OF NUISANCE—DISCOVERY.

No costs are allowed in suit against a telegraph company to abate a nuisance and for bill for discovery, a public question being involved.

BOYLES and REID, JJ., dissenting in part.

Appeal from Washtenaw; Breakey (James R., Jr.), J. Submitted April 15, 1952. (Calendar No. 44,941.) Decided March 10, 1953.

Bill by State of Michigan, *ex rel.* Douglas K. Reading, Prosecuting Attorney of Washtenaw County, against Western Union Telegraph Company, a foreign corporation, to abate a nuisance. Order granting temporary injunction and discovery. Defendant appeals. Reversed and remanded.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Douglas K. Reading,* Prosecuting Attorney, and *Edmond F. DeVine,* Chief Assistant Prosecuting Attorney, for State of Michigan.

*Burke, Burke & Smith (John H. Waters,* of counsel), for defendant.

DETHMERS, C. J. This matter was assigned to the late Chief Justice NORTH, who, due to ensuing illness, was unable to complete an opinion. It is an appeal by defendant, on leave granted, from an order of the circuit court granting plaintiff's motion for discovery and for a temporary injunction restraining defendant from continuing the course of conduct, hereinafter considered, charged against it in plaintiff's bill of complaint and denying defendant's motion to dismiss in part said bill filed in 1950 under the provisions of CL 1948, § 692.251 *et seq.* (Stat

Ann and Stat Ann 1949 Cum Supp § 18.901 *et seq.*) (later amendment, PA 1951, No 80, not applicable), to enjoin and abate an alleged nuisance.

Plaintiff's bill of complaint alleges, in substance, *inter alia*, that defendant is engaged in the business of receiving, transmitting and sending by wire or telegraph, dispatches, messages and money, for compensation, and that it maintains 2 specified offices for that purpose in the county in question; that it has, in said offices, knowingly accepted bets, or money bet on horse races, for transmission to addresses outside the State to be placed there as bets on horse races, and transmitted the winnings therefrom sent by persons at such out-of-State addresses to local bettors in said county, knowing that it was thereby aiding unlawful gambling transactions; and that it has knowingly permitted persons to be in said offices for those purposes. Pertinent portions of section 1 of the cited statute, under which plaintiff's bill recites that it was brought, read as follows:

"Any building, vehicle or place used for the purpose of * * * gambling * * * is hereby declared a nuisance * * * and all such nuisances shall be enjoined and abated as hereinafter provided."

Section 12 of the act provides that, if the existence of a nuisance be established in the manner provided in the act, an order of abatement shall be entered, which shall provide for removal from the building and sale of its contents and padlocking the place for 1 year.

Do such averments of the bill as are summarized above serve to allege the existence of a nuisance on the premises within the meaning of the statute?

"A bet, like an ordinary contract, involves a concurrence of wills; there must be an offer and acceptance thereof in accordance with its terms." *Mc-*

*Questen* v. *Steinmetz,* 73 NH 9 (58 A 876, 111 Am St Rep 592).

"If, therefore, an offer to bet is telegraphed by a person in this city to another in New York, and the latter accepts by telegraph, the betting is done, not in Richmond, but in New York, because the offer, being accepted there, takes effect there." *Lescallett* v. *Commonwealth,* 89 Va 878 (17 SE 546).

In *Klock* v. *Brown,* 172 Mich 379 (Ann Cas 1914 D, 48), it was held that a bétting contract did not result from a principal's placing in the hands of a faithless agent money "with instructions to make a bet of the same," when the agent appropriated it, instead, to his own use.  The *Klock Case* announced a rule in Michigan in line with that of the quoted New Hampshire and Virigina cases to the effect that a bet is made at the time and place where the offer of it is accepted.  Under the noted allegations of plaintiff's bill of complaint such acceptance occurred, if at all, out of the State and in no sense in the said 2 offices of defendant located within the county in question in this State.  Those offices were not, therefore, buildings or places "used for the purpose of * * * gambling" as defined in the statute.  Accordingly, the averments of the bill of complaint so far considered, taken as true, fail to establish a case of nuisance under the statute so as to entitle plaintiff to the injunctive relief therein provided.  We are cited to no authority for the view, nor do we entertain it, that they make out a case of nuisance, independent of the statute, at common law, enjoinable in a court of equity.

Other allegations in the bill of complaint, although perhaps susceptible of the narrow interpretation that they charge gambling on the said premises unrelated to the above-described transactions, nevertheless, fairly construed, as we think, and read in the light of all the averments of the bill, have refer-

ence only thereto. That is to say, they reiterate, in vague and indefinite generalities, the definite allegations concerning the transmission of messages and money to out-of-State points for placing there as bets and the transmission of the winnings therefrom to the bettors in the local offices in this State. If it were plaintiff's contention that the said allegations do not refer to transactions of that character but to other matters altogether, they suffer from the infirmity of amounting to no more than conclusions and generalities unsupported by any statement of the facts or the nature of the transactions upon which they are based and, in that event, defendant would be entitled to the granting of its motion that such allegations be stricken or the bill of complaint dismissed in part to eliminate them, inasmuch as plaintiff made no offer to amend to supply the defect.

Allegations in the bill of complaint that defendant aided gambling by the above-described practices or that it entered into gambling conspiracies relate to subjects foreign to the statute in question and, if proved, fail to establish a nuisance under it or at common law warranting exercise of the injunctive power of the court. Nor is plaintiff aided by such allegations if, perchance, they effectually charge the commission of crimes by defendant inasmuch as equity will not, independent of the element of nuisance or interference with the property or pecuniary rights of another, enjoin the commission of a crime. *United Detroit Theatres Corp.* v. *Colonial Theatrical Enterprise, Inc.,* 280 Mich 425. The temporary injunction should have been denied.

Mr. Justice REID, in writing that the 2 telegraph offices here involved were "used for the purpose of gambling", cites *People, ex rel. Wayne Prosecuting Attorney,* v. *Tate,* 306 Mich 667; *People, ex rel. Wayne Prosecuting Attorney,* v. *Sill,* 310 Mich 570;

and *People, ex rel. Wayne Prosecuting Attorney,* v. *Bitonti,* 306 Mich 115. In each of those cases an automobile, used, as an "essential tool" and vital link in a gaming operation, to transport mutuel betting tickets, was held to be a nuisance, subject to seizure and sale. This was corollary to the provisions of CL 1948, § 750.306 (Stat Ann § 28.538), declaring the gambling paraphernalia contained in the vehicles to be a common nuisance and their possession a misdemeanor. The distinction is clear. In the instant case the allegations of the bill fail to make out not only a case of gambling in defendant's offices but also of possessing anything there which may not lawfully be possessed. Assume, however, that defendant, as a public carrier, instead of wiring money and messages, as here, engaged in transporting, in interstate commerce, between points inside and outside of Michigan, gambling devices which may not lawfully be possessed in this State. Would its actions in that respect come within the purview of the nuisance statute here involved? In *Grand Trunk W. R. Co.* v. *City of Lansing,* 291 Mich 589, we held in effect that certain gaming devices, namely, slot machines, the keeping or maintaining of which, as such, constituted a misdemeanor under CL 1948, § 750.303 (Stat Ann § 28.535), were not subject to statutory seizure when in possession of a railway company for transportation, in interstate commerce, from a point outside Michigan and delivery to a consignee in Michigan. Utterly incompatible with that holding is the idea that the railway company might, under the facts in that case, have been restrained from possessing, transporting or delivering the slot machines. At greater variance therewith is the suggestion that the transportation, by defendant public carrier in interstate commerce, of money, which it is still lawful to possess in Michigan, from this State to points outside the State, for placing there as bets, may be

restrained by our courts or defendant's places of business used in connection therewith declared nuisances, subject to abatement.

What of the order for discovery? In *People, ex rel. Moll,* v. *Danziger,* 238 Mich 39, after discussing the rights protected by the provision of Michigan Constitution of 1908, art 2, § 16, that "no person shall be compelled in any criminal case to be a witness against himself" this Court quoted with approval from 3 Story's Equity Jurisprudence (14th ed), § 1942, the following:

"In the next place, courts of equity will not entertain a bill for a discovery to aid the promotion or defense of any suit which is not purely of a civil nature. Thus, for example, they will not compel a discovery in aid of a criminal prosecution, or of a penal action, or of a suit in its nature partaking of such a character, or in a case involving moral turpitude; for it is against the genius of the common law to compel a party to accuse himself; and it is against the general principles of equity to aid in the enforcement of penalties or forfeitures."

We then went on to say:

"The cases are quite uniform in holding that where the bill is filed solely for discovery, and the facts upon which discovery is sought are such as would tend to criminate defendant, the bill can not be maintained at all and should be dismissed on demurrer. The bills in these cases were filed solely to require defendants to disclose by answer what they could not be required to disclose as witnesses on the stand, and sought to accomplish by indirection what could not be accomplished directly. * * *

"The cases both in England and in this country are quite uniform in holding that a defendant may not be required in his answer to state facts which would tend to criminate himself."

Then, after quoting from *Robson* v. *Doyle,* 191 Ill 566 (61 NE 435), of which a part is the following:

"Now, courts of equity have always withheld their aid in actions which were penal in their nature, and would never compel a defendant to disclose facts which would expose him to criminal punishment or prosecution, or to pains, penalties, fines or forfeitures. A defendant may refuse to answer, not only as to facts directly criminating him, but as to any fact which might form a link in the chain of evidence establishing his liability to punishment, penalty or forfeiture."

This Court, in speaking of the Illinois case, said further:

"This case, it will be noted, belongs to that class of cases to which we have adverted, where the bills are filed solely for discovery of acts criminal in their nature. These bills show upon their face that the disclosure sought is of facts which tend to establish the violation of a penal statute and are, therefore, bad on demurrer. But the case is in line with the many other holdings that a defendant may not be required by his answer to state facts which will tend to criminate himself, and this must be regarded as the settled law both in England and in this country."

We further said:

"We have pointed out that in a considerable number of the cases the bills were filed solely for discovery, and where they show on their face that to require an answer would invade defendant's constitutional rights they have been dismissed on demurrer. In such cases the discovery sought was of facts which would tend to criminate defendant and his answer under such circumstances could be used in evidence against him in a criminal proceeding. Such bills were properly dismissed on demurrer, and in *Claridge* v. *Hoare,* 14 Ves Jr 59 (33 Eng Rep

443), it was held that the defendant could protect himself from discovery by plea."

Discovery was permitted in the *Danziger Case,* brought under the statute here in question, only because there the allegations of the bill were sufficient to charge the maintenance of a statutory nuisance.

It is, then, clearly the rule in Michigan that discovery will not be permitted in aid of criminal prosecutions or penal actions, but only in cases purely of a civil nature. Accordingly, plaintiff urges in support of its claim of right to discovery that, despite numerous statements in its bill in the nature of conclusions that defendant has been guilty of the commission of crimes, this is not a criminal case but a civil matter in equity for abatement of a nuisance. That, under the circumstances and our opinion in the *Danziger Case,* is a prerequisite to plaintiff's right to discovery. As we have already seen, however, plaintiff's bill fails to make out a case of nuisance. Nothing of a civil nature remains. We quote with approval from *O'Brien* v. *O'Brien,* 362 Pa 66 (66 A2d 309, 10 ALR2d 714), the following:

"It is axiomatic that a bill for discovery in aid of an action or a defense at law cannot be maintained if the action or the defense itself cannot be maintained; this is because a bill for discovery in aid of a claim at law is wholly an ancillary proceeding, and if the asserted claim is itself invalid a bill for discovery in support of it must necessarily fall on demurrer."

It follows that the order for discovery was improperly entered.

Under the heading "Relief" in its brief on appeal defendant for the first time asks that these proceedings for abatement of nuisance be dismissed. While our views on the subject of the sufficiency of plaintiff's bill of complaint are made evident here-

in, we can scarcely direct dismissal thereof in the absence of a motion for that purpose in the court below. The order appealed from, denying defendant's motion to dismiss the bill of complaint in part, and granting plaintiff's motion for temporary injunction and discovery, is reversed, vacated and set aside and the cause remanded for such further proceedings, not inconsistent herewith, as may be deemed proper. No costs, a public question being involved.

BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred with DETHMERS, C. J.

REID, J. (*dissenting in part*). I agree with Chief Justice DETHMERS that there can be no discovery in this type of case.

I do not agree that there should be no injunction forbidding the receiving and transmitting of money (in Michigan) to be placed on bets outside of the State. Such illegal acts described in the statute as are committed within the State, the equity court has jurisdiction to enjoin.

The section of the act in question (CL 1948, § 692.-251 [Stat Ann § 18.901]) is as follows:

"Any *building, vehicle* or *place* used for the purpose of lewdness, assignation or prostitution or gambling, or used by, or kept for the use of prostitutes or other disorderly persons, or used for the unlawful manufacture, storing, possessing, transporting, sale, keeping for sale, giving away, bartering, furnishing or otherwise disposing of any vinous, malt, brewed, fermented, spirituous or intoxicating liquors or any mixed liquors or beverages, any part of which is intoxicating, is hereby declared a nuisance and the furniture, fixtures and contents of any such building, vehicle or place, and all such intoxicating liquors therein are also declared a nuisance and all

such nuisances shall be enjoined and abated as hereinafter provided. Any person, or his servant, agent or employee who shall own, lease, conduct or maintain any *building, vehicle* or *place* used for any of the purposes or by any of the persons above set forth or where any of the acts above enumerated are conducted, permitted or carried on, is guilty of a nuisance." (Italics supplied.) *

We have heretofore properly and by necessary inference construed and applied this statute as to the meaning of the phrase, "used for the purpose of," as including acts and uses of property before effectuation of the forbidden purpose.

In *People, ex rel. Wayne Prosecuting Attorney,* v. *Tate,* 306 Mich 667, we say (per syllabus):

. "Decree of trial court in suit to abate a nuisance and confiscate car used in gambling operations, whereby car was impounded for 5 months and owner restrained from loaning it to party using it when it was seized, is affirmed."

. There is nothing in the *Tate Case* to show that the car was the place where the bet was completed. The contrary is implied.

.. In *People, ex rel. Wayne Prosecuting Attorney,* v. *Sill,* 310 Mich 570, a chancery proceeding brought under the act in question in this case, to abate a nuisance, we upheld a decree which adjudicated that an automobile used by its owner in transporting mutuel bet slips, was a nuisance, and that it be sold by the sheriff. There was no claim or showing that any bet was perfected in the automobile. While the owner of the car was transporting the mutuel bet slips, the bets very evidently were not yet accomplished. It is fair to deduce that the automobile was merely used for the purpose of bringing about a bet.

---

* For another statute concerning gambling and place and apparatus used in gambling, see CL 1948, § 750.302 (Stat Ann § 28.534).

In the *Sill Case,* at page 575, we say:

"The method by which the 'numbers racket' operates appears in *People, ex rel. Wayne Prosecuting Attorney,* v. *Bitonti,* 306 Mich 115; and *People, ex rel. Wayne Prosecuting Attorney,* v. *Tate,* 306 Mich 667. The use of automobiles as essential tools in this type of gambling is generally recognized. The purpose of PA 1925, No 389, is to eliminate effectively, by statutory procedure, the use of property, real or personal, in connection with gambling, prostitution, and illicit sale of liquor, et cetera."

In the instant case, it is likewise apparent that the telegraph office was used in connection with gambling, and such use was an indispensable part in the consummation of this type of gambling transaction. The property was an "essential tool" used for the purpose of gambling, and clearly falls within the purview of the statute.

The remedies in the first part of the section are the remedies of injunction and confiscation and are aimed at prevention of illegal use of property. The construction of the section as contended for in this opinion is eminently appropriate as a basis for injunction, for the purpose of *prevention.* We have upheld the constitutionality of this act as far as concerns its provisions for injunction. *People, ex rel. Attorney General,* v. *Donovan,* 228 Mich 520; *People, ex rel. Attorney General,* v. *Holschuh,* 235 Mich 272 (syllabus 5).

The words in the first line of the section in question, "used for the purpose of," clearly and unmistakably apply not only to "building" or "place" but also to the word "vehicle." As to the offense of gambling, it is very apparent that the use of a vehicle in gambling is an accessory use and the vehicle is not the place where the completed offense occurs. It is necessary to conclude that the legislature in-

tended the words "used for the purpose of" to include both meanings, *i.e.*, used to bring about an effectuated purpose and used in pursuance of a purpose not as yet, if ever, effectuated.

The inclusiveness of the meaning of the words "used for the purpose of" is illustrated in the 2 cases, *People, ex rel. Wayne Prosecuting Attorney,* v. *Sill* and *People, ex rel. Wayne Prosecuting Attorney,* v. *Tate, supra.* The meaning which the Chief Justice would exclude, has been recognized, used and applied by us in those 2 cases hereinbefore noted. The statute does not recite that the purpose must have become fulfilled or effectuated.

Not in the *Tate Case* nor in the *Sill Case,* did this Court by corollary or otherwise base its decision in whole or in part on CL 1948, § 750.306 (Stat Ann § 28.538), which declares the gambling paraphernalia such as was contained in the vehicles to be a common nuisance. Decision in each of those 2 cases was based upon our construction of the statute in question in this case.

The Chief Justice cites *Grand Trunk W. R. Co.* v. *City of Lansing,* 291 Mich 589, in support of the theory that the interstate commerce duties of defendant as common carrier, required defendant to accept and deliver moneys and messages in gambling transactions; but in that case, the slot machines had been shipped from Baltimore, Maryland, and were in course of interstate commerce when received by the Grand Trunk Railway and until delivered to the consignee. That situation was totally different from the instant case in which the money and messages relating thereto had not as yet been placed in interstate commerce when offered to defendant for transmission. There was no duty nor right on the part of defendant Western Union in the instant case, to *receive* money nor message, *to be transmitted* for gambling purposes.

"The majority of the cases support the rule applied in the reported case (*Wiggins* v. *Postal Telegraph Co., ante* [44 ALR] 781 [130 SC 292, 125 SE 568]), that a telegraph company is not liable for negligence in connection with the transmission of telegrams which relate to gambling transactions." 44 ALR 783, citing many cases, including *Carland* v. *Western Union Telegraph Co.,* 118 Mich 369 (43 LRA 280, 74 Am St Rep 394).

In the *Carland Case,* we say, pages 377, 378:

"It is contended further that this telegram was sent in furtherance of a gambling contract, which would have been void under the statute, and that damages for a failure to deliver it cannot be recovered. How Stat § 9354f, prohibits the purchase and sale of grain, et cetera, on margins for future or optional delivery, without any intention of receiving or paying for the property so bought or sold. If this claim were conclusively proved, so that we could find the fact as alleged, we should have no doubt that the plaintiff's action must fail."

"Therefore, if Mo RS 1909, § 7227 makes it unlawful for a common carrier to keep, store, and deliver a consignment of pure alcohol to a licensed druggist and pharmacist in a local option community to be used in the preparation of tinctures and prescriptions, then the carrier may, no doubt, refuse to accept such consignment for shipment. *State, ex rel. Gibson,* v. *Chicago, B. & Q. R. Co.* (Mo App), 191 SW 1051; *State, ex rel. Chicago, B. & Q. R. Co.,* v. *Woolfolk,* 269 Mo 389 (190 SW 877)." *Gum* v. *St. Louis & S. F. R. Co.* (Mo App), 198 SW 494, 496.

"Where a brewing company proffers intoxicating liquors to a railroad for carriage into Indian Territory, where the introduction of such liquors is prohibited by the State Constitution, the road's refusal to carry is justified." *Leisy Brewing Co.* v. *Atchison, T. & S. F. R. Co.,* 141 CCA 3 (225 F 753) (per syllabus 2).

See, also, *Melchert* v. *American Union Telegraph Co.*, 11 F 193, where damages were claimed because of the claimed negligence of defendant relating to transmitting a telegram from Davenport, Iowa, to Chicago, Illinois, for a proposed transaction amounting in effect to gambling; the proposed contracts being void, judgment was given defendant.

In its answer defendant in the trial court raised the defense of its status under the interstate commerce clause, but made no mention of such matter in its reasons and grounds for appeal, nor in its statement in its brief of the questions involved in this Court, and may be said to have abandoned that defense.

In the instant case, the bill charges and the answer admits that defendant in its telegraph office received and transmitted by wire certain moneys for the purpose of completing specified bets in Illinois.

Defendant in its brief goes even further and states, "Offers to wager are freely sent and received every day, sometimes involving football games, sometimes baseball games, sometimes stock market transactions, sometimes horse races." The 2 admitted specific instances charged in the bill are in practical effect admitted to be but particular instances of an habitual practice of defendant.

The necessity and basis for a temporary injunction in the instant case is shown and the temporary injunctive order against defendant's permitting its 2 offices in Washtenaw county, mentioned in the bill of complaint, to be used in receiving or transmitting money or offers for use in gambling operations or to effectuate betting to be elsewhere completed should be to that extent only affirmed. The case should be remanded to the trial court for an immediate hearing as far as found necessary, after time for rehearing

in this Court has elapsed.   No costs, neither party having prevailed in full.

BOYLES, J., concurred with REID, J.

The late Justice NORTH did not participate in this decision.