STATE *ex rel* WAYNE COUNTY PROSECUTING ATTORNEY v
LEVENBURG

1. NUISANCE—PROSTITUTION—SEX ACTS FOR HIRE—ACCOSTING AND
   SOLICITING—ABATEMENT—STATUTES.

   The public nuisance abatement act requires a finding that the
   premises are used as a house of prostitution with sex acts for
   hire in order to invoke the remedies of the act; numerous
   instances of accosting and soliciting on the premises are not
   violations, and to close the premises upon such evidence goes
   beyond the reach of the statute (MCLA 600.3801; MSA
   27A.3801).

2. NUISANCE—OBSCENITY—MOTION PICTURES—ABATEMENT—STATUTES.

   The nuisance abatement statute has no application to motion
   picture theatres wherein sexual acts are not committed but are
   portrayed on the screen (MCLA 600.3801; MSA 27A.3801).

3. PROSTITUTION—DISORDERLY HOUSE—ASSIGNATION—ACCOSTING AND
   SOLICITING.

   Acts of accosting and soliciting cannot be equated with the
   statutory meaning of assignation; the occurrence of a number
   of acts of accosting and soliciting in a building do not render
   that building a house of prostitution.

4. PROSTITUTION—DISORDERLY HOUSE—ACCOSTING AND SOLICITING—
   INITIAL CONTACT—BARS OR OTHER BUILDINGS—PURPOSE OF
   STATUTES.

   A shift in the practice of prostitution from use of houses of
   prostitution to a pattern involving initial contact through
   accosting and soliciting in various parts of the community does
   not change the intent or meaning of the nuisance abatement
   statute which applies to houses of prostitution and not to bars
   or other buildings in which accosting and soliciting occur
   (MCLA 600.3801; MSA 27A.3801).

REFERENCES FOR POINTS IN HEADNOTES

[1] 63 Am Jur 2d, Prostitution § 2.
[2] 58 Am Jur 2d, Nuisances § 143.
[3] 63 Am Jur 2d, Prostitution § 14.
[4] 63 Am Jur 2d, Prostitution § 4.

Appeal from Wayne, Blair Moody, Jr., J. Submitted December 7, 1976, at Detroit. (Docket No. 27487.) Decided April 18, 1977. Leave to appeal applied for.

Complaint by the State of Michigan on the relation of William L. Cahalan, Wayne County Prosecuting Attorney, against Harry Levenburg, Anderson's Gardens, Inc., and Albert Porvin to abate a nuisance. Judgment for plaintiff. Defendants Levenburg and Anderson's Gardens appeal. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Research, Training & Appeals, and *Maura D. Corrigan,* Assistant Prosecuting Attorney, for the plaintiff.

*Hyman, Gurwin, Nachman, Friedman & Winkelman* and *Grant, Schon, Wise & Grant,* for defendants Harry Levenburg and Anderson's Gardens, Inc.

Before: Bronson, P. J., and Bashara and C. L. Horn,* JJ.

Bronson, P. J. This is an action to abate a nuisance pursuant to MCLA 600.3801; MSA 27A.3801, the so-called padlock statute. Named as defendants were Anderson's Gardens, Inc., the holder of a class C liquor license, Harry Levenburg, the sole stockholder of the corporation and operator of the bar, and Albert Porvin, titleholder along with Levenburg of the building leased to Anderson's Gardens for its operation.

A lengthy bench trial, resulting in some 52

---

* Circuit judge, sitting on the Court of Appeals by assignment.

volumes of transcript, was had in Wayne County Circuit Court over a period of months. On January 28, 1976, the trial judge issued an opinion finding Anderson's Gardens to be a public nuisance within the meaning of the abatement statute. An order closing Anderson's Gardens for a period of one year was issued, with provisions made to permit the reopening of the bar after four months upon certain conditions. The judgment has been stayed pending appeal by Harry Levenburg and the corporation. We reverse.

The statute in question provides in relevant part as follows:

"Any building * * * or place used for the purpose of lewdness, assignation, or prostitution * * * or used by, or kept for the use of prostitutes or other disorderly persons * * * is hereby declared a nuisance * * * and * * * shall be enjoined and abated."

The trial court held that Anderson's Gardens was "a building or place used for the purpose of assignation and used by prostitutes" within the meaning of this statute and consequently amounted to a public nuisance subject to abatement under the act.

This holding was based on a factual finding, amply supported by evidence, that numerous instances of accosting and soliciting for purposes of prostitution had occurred on the premises of Anderson's Gardens between January 1, 1971, and June 30, 1974. The trial court made no findings that Anderson's Gardens was a house of prostitution or that any sex acts for hire had occurred on the premises and no evidence of such activities had been presented at the trial.

Under the trial court's view of the statute, however, the statute did not require that such activi-

ties be proved in order to invoke the remedies of the act. The trial court read "assignation" as including the making of an appointment for purposes of prostitution, and thus including the act of soliciting for prostitution. He accepted the prosecutor's evidence of numerous instances of accosting and soliciting on the premises of Anderson's Gardens as proof that the statute had been violated.

We disagree with the trial judge as to the reach of the statute. Consequently, we reverse the holding that Anderson's Gardens is a nuisance within the meaning of the abatement act and vacate the order closing the bar.

Our conclusion is premised on several developments pertaining to the abatement act occurring after the decision in this case. The judgment and order in this case were entered on February 2, 1976. On April 1, 1976, the Supreme Court decided the case of *State ex rel Wayne County Prosecutor v Diversified Theatrical Corp,* 396 Mich 244; 240 NW2d 460 (1976).

In that case, a unanimous Supreme Court held that the Michigan abatement statute, MCLA 600.3801, *et seq.;* MSA 27A.3801, *et seq.,* had no application to "motion picture theatres where sexual acts are not committed but are portrayed on the screen". *Diversified, supra,* at 246.

Standing alone, this holding would not necessarily seem to have great significance to the instant case, not involving a motion picture theater. But a second look at the *Diversified* opinion reveals that the result was reached only after a reexamination and redefinition of the purpose and scope of the abatement act and that at least some previous case interpretations of that act can no longer be considered reliable. We think that the Supreme Court in *Diversified* interpreted the language of

the statute in such a way as to preclude its application on the facts found by the trial court in this case.

The Supreme Court opinion began by referring to the Michigan statute as being one of a number of "red light abatement acts", passed in the early part of this century. *Diversified, supra,* at 246. The Court emphasized that the purpose of the act, aside from its reference to liquor and gambling, was to subject houses of prostitution to abatement as public nuisances and that the statutory terms, assignation, lewdness, and prostitution, were synonymous and directed towards this end. *Diversified, supra,* at 246–250.

The Court's interpretation of the statute was based upon judicial interpretations of similar statutes in other jurisdictions. The Washington case of *State, ex rel Carroll v Gatter,* 43 Wash 2d 153; 260 P2d 360 (1953), was cited for its holding that a similar Washington statute was directed to the abatement of houses of prostitution and could not be used to padlock a hotel that was not a house of prostitution.

A Nebraska Supreme Court opinion[1] interpreting a similar statute was quoted as follows:

" 'The object of the statute is to provide an efficient and prompt means for suppressing the so-called "red light district" in communities that are unwilling to tolerate such a nuisance. The statute is not intended as a means of regulating the morals of private individuals, nor to prevent immorality in hotels, mainly devoted to the accommodation of families and moral, well-behaved people.' " *Diversified, supra,* at 247. (Emphasis omitted.)

The Court quoted from an Illinois Court of Ap-

---

[1] *State, ex rel English, v Fanning,* 97 Neb 224, 228; 149 NW 413 (1914).

peals decision construing a similar statute as follows:

"*It appears to us too, that this statute is aimed solely and only at houses of prostitution.* * * * Thus "assignation", a euphemism coined years ago to protect the hypersensitive, is synonymous with "prostitution". So, too, with "lewdness"—it must equate with "prostitution", and "assignation" in the sense just described * * * .'" *People v Goldman,* 7 Ill App 3d 253; 287 NE2d 177, 178–179 (1972), quoted in *Diversified, supra,* at 249.

The Michigan Court concluded as follows:

"We are in accord with decisions applying these abatement statutes only to houses of prostitution. The meaning of the words 'lewdness, assignation or prostitution' is clear in light of the history and purpose of these statutes and that meaning cannot properly be expanded by judicial construction." *Diversified, supra,* at 250.

From the foregoing discussion, it is evident that the statutory term "assignation" must be read as being synonymous with "prostitution", thus referring to the performance of sexual acts for profit. Consequently, the lower court interpretation of that term as including the making of an appointment for prostitution, and including solicitation for prostitution, is erroneous. Since there was no proof and no finding that sexual acts for profit occurred at Anderson's Gardens, the trial court holding that it is a "building or place used for the purpose of assignation" is erroneous and must be reversed.

The trial court's other holding, that Anderson's Gardens was a "building or place * * * used by prostitutes", and thus a nuisance as defined by the statute, is also erroneous.

The trial court recognized that the statute would be overly broad and probably unconstitutional, if it were interpreted as subjecting to abatement any building used by prostitutes for any purpose whatsoever, even those wholly innocent. Thus the phrase was construed so as to include only the use of a building by prostitutes for purposes reflected in the act, including use by prostitutes for assignation. Assignation was defined, however, to include accosting and soliciting for purposes of prostitution. Thus, since Anderson's Gardens was found to be used by prostitutes for accosting and soliciting, it was concluded that a use prohibited by this statute had occurred.

We agree that the statutory phrase "used by prostitutes" requires a construction narrowing it to use by prostitutes for purposes of "lewdness, assignation, or prostitution". We had reached that conclusion even before the *Diversified* opinion. See *State ex rel Wayne County Prosecuting Attorney v Bernstein,* 57 Mich App 204, 209; 226 NW2d 56 (1974). In view of *Diversified,* however, acts of accosting and soliciting cannot be equated with the statutory meaning of assignation. The occurrence of a number of acts of accosting and soliciting in a building does not render that building a house of prostitution.

Nor do we agree with the reasoning used by a majority of another panel of this Court in a recent opinion to sustain an abatement order under this statute directed towards a building found to have been used by prostitutes for accosting and soliciting. *State ex rel Wayne County Prosecutor v Saksey's Lounge, Inc (On Remand),* 71 Mich App 724; 249 NW2d 156 (1976).

After original Court of Appeals affirmance of the circuit court in an unpublished opinion relying on

*Bernstein, supra,* the case was remanded by the Supreme Court to this Court for reconsideration in light of *Diversified.* 397 Mich 831 (1976).

On reconsideration, the order closing the defendant's bar was again affirmed. A majority of the panel read *Diversified* as interpreting only that part of the abatement act referring to places used for the purpose of lewdness, assignation, or prostitution and as having no application to the meaning of the phrase referring to the use of the building or place by prostitutes.[2] *Saksey's Lounge, supra,* at 727.

To sustain the lower court, the panel relied on *People ex rel Wayne Prosecuting Attorney v Sill,* 310 Mich 570; 17 NW2d 756 (1945), a case holding that an automobile used to carry mutuel bet slips and money used in gambling was a public nuisance and could be abated under the statute despite the fact that no gambling occurred in the car itself. The decision in *Sill* was apparently based on the Supreme Court's expressed recognition that automobiles were an essential tool in the type of gambling under consideration, the numbers racket. *Sill, supra,* at 575.

Relying on *Sill,* the *Saksey* panel found that the defendant's bar had properly been abated under the statute despite the absence of evidence that sexual acts for money had taken place on the premises because, just as the automobile in *Sill* had been recognized as an essential tool in the

---

[2] Circuit Judge R. E. NOBLE, sitting on the Court of Appeals by assignment, dissented. He said the following about the language of the abatement act:

"This language begs for judicial interpretation. The Supreme Court, in the *Diversified* case, *supra,* has supplied a reasonable interpretation consistent with constitutional limitations.

"The appellants' bar was not a house of prostitution.

"I would reverse." 71 Mich App 729.

We agree.

gambling operation, so also were the premises of Saksey's Lounge "used as a conduit of prostitution". *Saksey's Lounge, supra,* at 728.

We consider this reliance on *Sill* to have been unwarranted. *Sill* was decided in 1945. Subsequently, the Supreme Court decided the case of *State, ex rel Washtenaw County Prosecuting Attorney v Western Union Telegraph Co,* 336 Mich 84; 57 NW2d 537 (1953). In that case, the plaintiff prosecuting attorney had sought an injunction pursuant to the Michigan abatement act, charging in his complaint that two offices of the defendant telegraph company were "used for the purpose of * * * gambling" in that the defendant, through its agents in those offices, had knowingly accepted bets, or money bet on horse races, for transmission out of state and had transmitted winnings from such bets from outstate persons to local bettors, thereby aiding unlawful gambling transactions. *Western Union, supra,* at 89.

The Supreme Court held that these allegations did not charge a nuisance within the meaning of the statute. The Court held that since a bet was like an ordinary contract in that it required both an offer and an acceptance to be complete, an offer to bet telegraphed from Michigan and accepted by telegraph from out of state resulted in the actual betting taking place out of state. *Western Union, supra,* at 88–89. The Court went on:

"Under the noted allegations of plaintiff's bill of complaint such acceptance occurred, if at all, out of the State and in no sense in the said 2 offices of defendant located within the county in question in this State. Those offices were not, therefore, buildings or places 'used for the purpose of * * * gambling' as defined in the statute. Accordingly, the averments of the bill of

complaint so far considered, taken as true, fail to establish a case of nuisance under the statute so as to entitle plaintiff to the injunctive relief therein provided." *Western Union, supra,* at 89.

The Court did not follow any theory which would apply the abatement act to any property "essential" to or a "conduit" of gambling. *Sill* and other similar cases involving the abatement of automobiles used in transporting mutuel betting tickets were mentioned and distinguished, *Western Union, supra,* at 91, though so unconvincingly, *Western Union, supra,* at 96–97, that they must be considered to have been discredited.[3] Moreover, we fail to see how the holding of *Sill,* later contradicted by *Western Union,* could be considered to have been resurrected by the *Diversified* opinion, which merely cites *Sill* for a general statement as to the purpose of the abatement act.

To the contrary, the most important aspect of the Supreme Court decision in *Diversified,* as we read it, is to announce that the abatement act is to be interpreted in light of the intent of the Legislature at the time the act was passed. The act, as it applies to prostitution, has not been amended in 50 years. Testimony at the trial in this case indicates that in that time, the practice of prostitution has shifted from being centered mainly in houses of prostitution to a pattern primarily involving

---

[3] The majority distinguished *Sill,* and two similar cases, as follows:

"In each of those cases an automobile, used, as an 'essential tool' and vital link in a gaming operation, to transport mutuel betting tickets, was held to be a nuisance, subject to seizure and sale. This was corollary to the provisions of CL 1948, § 750.306 (Stat Ann § 28.538), declaring the gambling paraphernalia contained in the vehicles to be a common nuisance and their possession a misdemeanor." *Western Union, supra,* at 91.

The dissent pointed out that those cases had been decided solely by construing the abatement act, and had placed no reliance on any other statute. *Western Union, supra,* at 97.

initial contact through accosting and soliciting in various parts of the community.

The intent and meaning of the statute, however, was fixed at the time of its enactment. The reach of the statute does not shift from year to year coincidently with changing community views, attitudes or appetites for vice or with changing patterns of operation in the historical vices. Just as the statute does not apply to motion picture theaters showing obscene movies, because it was never meant to, so also it does not apply to bars or other buildings in which accosting and soliciting occurs, because such was not within the intent of this statute at the time of its enactment.

Anderson's Gardens is not a house of prostitution. It may not be ordered closed as a nuisance under the aegis of the abatement act.

Reversed. Costs to appellant.