KIRKBY v. PUBLIC SERVICE COMMISSION.

1. AUTOMOBILES—MOTOR CARRIERS—HEARING ON CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY—INTERESTED PARTIES.

Under statute, pertaining to licensing of motor carriers, which provided that at the hearing on the application for a certificate of public convenience and necessity any interested party might appear before the commission to offer testimony and cross-examine witnesses, a corporation whose members were common motor carriers could very conceivably. be such an interested party (Act No. 254, art. 2, § 4, Pub. Acts 1933)..

2. SAME—CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY—INTERESTED PARTIES.

A common motor carrier, interested in the outcome of a proceeding to obtain a certificate of public convenience and necessity to operate as a common motor carrier, as well as a corporation whose members were common motor carriers, *held*, proper parties plaintiff in chancery suit to review order granting certificate to applicant (Act No. 254, art. 2, § 4, Pub. Acts 1933).

3. PUBLIC SERVICE COMMISSIONS—POWERS—STATUTES.

The public service commission has only such powers as are conferred upon it by statute.

4. AUTOMOBILES—COMMON MOTOR CARRIERS—CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY.

The extent of the authority granted by the public service commission under a certificate of public convenience and necessity to operate as a common motor carrier of freight depends upon, and may not exceed, what is sought by the application therefor (Act No. 254, art. 2, § 2, Pub. Acts 1933).

5. SAME—COMMON MOTOR CARRIERS—CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY—NOTICE—HEARING—ADEQUACY OF SERVICE.

The notice of an application for certificate of public convenience and necessity to operate as a common motor carrier and hearing thereon required to be given to all common motor carriers operating in the territory proposed to be served by the appli-

cant serves to place such carriers on notice and affords them an apportunity to show adequacy of existing facilities in opposition to the application (Act No. 254, art. 2, §§ 2, 4, 5, Pub. Acts 1933).

6. SAME—APPLICATION, NOTICE AND HEARING ON APPLICATION FOR CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY.

Where an application, notice, and statement of applicant at hearing for certificate of public convenience and necessity to engage in transportation of household goods to any point in the State show applicant sought authority for transportation *from* a specific city and vicinity, there was no occasion for other common motor carriers to make a showing that the service rendered by existing facilities for transportation of household goods from points in the State *to* such city was reasonably adequate (Act No. 254, art. 2, §§ 2, 4, 5, Pub. Acts 1933).

7. SAME—CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY— ADDITIONAL PRIVILEGES.

A certificate of public convenience and necessity to operate as a common motor carrier may not be granted applicant therefor so as to permit him to exercise the privilege sought upon condition that he exercise additional privileges not sought by him (Act No. 254, art. 2, §§ 2, 4, 5, Pub. Acts 1933).

Appeal from Ingham; Simpson (John), J., presiding. Submitted January 9, 1948. (Docket No. 48, Calendar No. 43,835.) Decided April 5, 1948.

Bill by Clyde T. Kirkby and others against Michigan Public Service Commission to review order of the commission. Ray-and Floyd Denoyer, doing business as Denoyer Brothers, intervened. Decree for defendants. Plaintiffs appeal. Defendant Commission cross-appeals. Reversed.

*Clark, Klein, Brucker & Waples, Harold J. Waples* and *Robert A. Sullivan* (*K. F. Clardy,* of counsel), for plaintiffs.

*Eugene F. Black,* Attorney General; *Edmund E. Shepherd,* Solicitor General, and *James W. Williams,* Assistant Attorney General, for defendant.

*Mellott & Keyes,* for intervenors.

DETHMERS, J.  Roy and Floyd Denoyer, doing business as Denoyer Brothers, hereinafter called defendants, made application to the Michigan public service commission for a certificate of public convenience and necessity to engage in the transportation of household goods to any point in Michigan from Traverse City or immediate vicinity.  The commission gave notice of the application, its contents and date of hearing thereon to the common motor carriers operating in the territory proposed to be served.  At the hearing one of the defendants was sworn as a witness and stated that the authority sought was to transport household goods from Traverse City and immediate vicinity to various Michigan points.

H. H. Hardy, secretary of the General Tariff Bureau, Inc., of which common motor carriers are members, entered his appearance before the commission for the Bureau and for Clyde Kirkby and Cadillac Storage & Transfer Company, the latter two being common motor carriers.  At the hearing Kirkby and Charles J. Foster, owner of Cadillac Storage & Transfer Company, appeared personally and testified in opposition to the application.

After the hearing, the commission entered an order granting defendants an original common carrier restricted certificate authorizing transportation of household goods between Traverse City and points within a 20-mile radius thereof and various Michigan points.  Plaintiffs thereupon brought this chancery action in the Ingham circuit court for the purpose of obtaining review of the commission's order under Act No. 254, art. 5, § 20, Pub. Acts 1933, as amended by Act No. 244, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 11352–55, Stat. Ann. 1947 Cum. Supp. § 22.585).  From a decree of the circuit court affirming the order of the commission plaintiffs appeal.  The commission has taken a cross appeal from

denial of its motion, before hearing on the merits, to dismiss plaintiffs' bill of complaint.

The substance of the commission's motion and cross appeal is that the General Tariff Bureau, Inc., is not a proper party plaintiff because it is not a common motor carrier and therefore had no direct interest in defendants' application and, further, that because H. H. Hardy is not an attorney at law his appearance for the other plaintiffs constituted illegal practice of law and was, therefore, void, with the result that, having no appearance entered, said plaintiffs were not parties to the proceedings before the commission and, consequently, not proper parties plaintiff in this suit. Article 2, § 4 of said Act No. 254 provides that any interested party may appear before the commission to offer testimony and cross-examine witnesses at the hearing upon application for certificate. The Bureau being composed of a membership of common motor carriers could very conceivably be such an interested party. Clyde T. Kirkby was a common motor carrier interested in the outcome of the proceedings before the commission. He was present and testified in opposition to the application. The same may be said for Charles J. Foster, who, until a few days after the hearing, was doing business as Cadillac Storage & Transfer Company. This business he sold, before this suit was instituted, to Roy Hewitt and Earl Hewitt, who thereafter continued in business as the Cadillac Storage & Transfer Company and who, by order of the trial court, were permitted to intervene as parties plaintiff. Under said section 4 Kirkby and the Bureau are proper parties plaintiff. The Hewitts were properly permitted to intervene as plaintiffs.

The plaintiffs raise the question whether the commission may enter an order granting defendants authority beyond that sought in their application or

stated in the notice thereof to other carriers or requested by defendants at the hearing.

The commission has only such powers as are conferred upon it by statute. *Grand Rapids & I. R. Co. v. Michigan Railroad Commission,* 183 Mich. 383; *Sparta Foundry Co.* v. *Michigan Public Utilities Commission,* 275 Mich. 562. Such authority as the commission has in the premises is to be found in said Act No. 254, Pub. Acts 1933, as amended.* The material sections thereof read in part as follows:

"Article II. Sec. 2. The commission is hereby vested with power and authority and it is hereby made its duty *upon the filing of an application* for a certificate of public convenience and necessity to ascertain and determine under such reasonable rules and regulations as it may promulgate, *after considering all existing motor vehicle transportation facilities* and the demand for or need of additional service, whether there exists a public necessity for such service and whether public convenience will be promoted by granting said application and permitting the operating of motor vehicles on the highways pursuant to such application as a common motor carrier of persons or property. * * *

"Sec. 4. Upon the filing of an application for a certificate of public convenience and necessity to operate as a common motor carrier, the commission shall fix a time and place for hearing thereon and shall cause notice of the filing of such application and the hearing thereon to be given by mail not less than ten days, exclusive of the date of mailing, before such hearing, addressed to an officer or owner of every common motor carrier that is operating in the territory proposed to be served by the applicant. * * *

"Sec. 5. * * * Said application may be granted, *in whole or in part,* and a certificate issued

---

* See Comp. Laws Supp. 1940, 1945, § 11352-1 *et seq.,* Stat. Ann. and Stat. Ann. 1945 Cum. Supp. § 22.531 *et seq.*

upon such lawful terms and conditions as said commission may impose, and subject to such rules and regulations as it has or may hereafter lawfully prescribe, *for the whole or for only the partial exercise of the privilege sought.*"

Under said section 2 the power of the commission to grant a certificate of public convenience and necessity is made dependent upon the filing of an application therefor. It is a corollary that the extent of the authority granted under such certificate must depend upon and may not exceed what is sought by the application.

Said section 2 requires the commission to consider "all existing motor vehicle transportation facilities," and section 5 provides "if the commission shall determine after hearing that the service rendered by existing motor vehicle transportation facilities or agencies is reasonably adequate  *  *  * said application shall be denied, and a certificate refused." The notice of application and hearing thereon, required by section 4 of the act to be given to all common motor carriers operating in the territory proposed to be served by the applicant, serves to place such carriers on notice and affords them an opportunity to urge upon the commission the adequacy of service rendered by existing motor-vehicle transportation facilities and thus, or otherwise, to oppose the application. The application, notice, and defendant's statement at the hearing that the only authority sought was for transportation from Traverse City and vicinity, all combined to throw the plaintiffs and other common carriers off guard by indicating that there was no occasion for them to make a showing that the service rendered by existing facilities for transportation of household goods from points in Michigan to Traverse City was reasonably adequate and that public convenience would not be promoted by granting authority therefor to

defendants. Thus was the very purpose of the notice and of the hearing itself subverted. In point is the case of *Erie R. Co.* v. *Public Utilities Commission of Ohio,* 128 Ohio St. 472 (191 N. E. 782), in which the court, in reversing an order of the commission for not following a provision of the Ohio statute requiring notice, said:

"The public utilities commission did not·comply with the provisions of section 614–91, General Code, by giving the Baltimore & Ohio Railroad Company, operating in the territory through which the applicant for a certificate of convenience and necessity proposes to operate, at least ten days' notice of the hearing upon such application (*Buckeye Stages, Inc.,* v. *Public Utilities Commission of Ohio,* 127 Ohio St. 575 [190 N. E. 219]), and the failure of the public utilities commission to give the statutory notice was not waived by the fact that the Baltimore & Ohio Railroad Company had knowledge of the filing and pendency of an application for a certificate prior to the decision of the commission thereon, *especially since the order which the commission finally granted exceeded the terms of the request contained in the application originally filed.*"

Cited is *Miller* v. *Tarry* (Tex. Civ. App. 1946), 191 S. W. (2d) 501, as authority that the commission may grant a greater privilege than that sought by applicant. That question, although discussed, was not actually before the court because it found that the application was fully as broad as the authority granted. Defendants also cite *Chicago, St. P., M. & O. R. Co.* v. *United States,* 322 U. S. 1 (64 Sup. Ct. 842, 88 L. Ed. 1093), and *McCracken* v. *United States,* 47 Fed. Supp. 444. These cases must be considered in the light of the pertinent provisions of the interstate commerce act. 49 USCA, § 308(a), 10A FCA, title 49, § 308a, provides in part:

"There shall, at the time of issuance and from time to time thereafter, be attached to the exercise of the privileges granted by the certificate such reasonable terms, conditions, and limitations as the public convenience and necessity may from time to time require, including terms, conditions, and limitations as to the extension of the route or routes of the carrier."

Under this provision of the congressional act the interstate commerce commission is held to have the express power to attach to the authority conferred by its certificate terms or conditions requiring the extension of the carrier's routes beyond those sought in its application.   Defendants contend that like authority is conferred upon the Michigan public utilities commission by the above quoted language from section 5 of the Michigan act.   It is to be noted, however, that while the Federal act expressly empowers the Federal commission to attach terms and conditions relating to the extension of routes, the Michigan act, on the other hand, makes no such provision, but permits the issuance of a certificate upon only such lawful terms and conditions as the commission may impose *"for the whole or for only the partial exercise of the privileges sought."* Whatever terms and conditions, incidental to and within the scope of the authority sought in the application, may be imposed under this language of the act, it cannot be read to authorize the commission to issue a certificate for the whole or partial exercise of the privilege sought upon the so-called terms and conditions that applicant accept and exercise additional privileges, not sought by applicant, substantially as great as the one sought.

Deeming the order of the commission void for these reasons, we need not consider other questions

raised by plaintiffs. A decree may enter in this Court reversing the decree of the trial court, holding the order of the Michigan public service commission void, and providing for a permanent injunction restraining the defendants from engaging in any operations under said order and the commission from permitting the same. Costs to plaintiffs.

BUSHNELL, C. J., and SHARPE, BOYLES, REID. NORTH, BUTZEL, and CARR, JJ., concurred.