MICHIGAN LICENSE BEVERAGE ASSOCIATION v BEHNAN
HALL, INC.

Docket No. 77-795. Submitted December 20, 1977, at Detroit.—Decided April 3, 1978.

The Michigan License Beverage Association brought an action against Behnan Hall, Inc., to permanently enjoin the defendant from renting premises to others for the consumption of alcoholic beverages and from further providing the food, bartenders, and assorted nonalcoholic beverages to be used with liquor on the rented premises, claiming a violation of the Michigan Liquor Control Act. The defendant argued that the plaintiff association lacked standing to maintain the action since it did not possess a liquor license and was not engaged in any commercial activity which would be affected by the outcome of the litigation. It also contended that equity jurisdiciton was not available in this instance to enjoin a violation of a criminal statute. The Oakland County Circuit Court, Robert B. Webster, J., found that the plaintiff did have standing to maintain the action as the representative of its liquor licensee members and, finding that equity jurisdiction was properly invoked, granted a permanent injunction prohibiting the defendant from providing food, and beverages to be used with liquor on the premises because such conduct was violative of the Liquor Control Act and damaging to the property rights of the liquor licensees represented by the plaintiff. Plaintiff appeals arguing that the injunction's prohibition should have included a ban on the consumption of alcoholic beverages on the rented premises. Defendant cross-appeals, primarily contending that the plaintiff lacked standing to maintain the action. *Held:*

The plaintiff nonprofit corporation, which did not possess a liquor license and was not engaged in any activity which would

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 6, 7] 59 Am Jur 2d, Parties §§ 26, 27.
[2] 45 Am Jur 2d, Intoxicating Liquors § 448.
[4] 59 Am Jur 2d, Parties § 81.
[5, 9] 42 Am Jur 2d, Injunctions §§ 157, 161.
[8] 45 Am Jur 2d, Intoxicating Liquors § 445 *et seq.*
[10] 22 Am Jur 2d, Declaratory Judgments § 25.

be affected by the outcome of the litigation and which was not constituted for representative litigation purposes according to its charter, did not have standing to maintain the action. The Court also found that the action was not properly brought because there was no indication of legal notice given to the plaintiff's liquor licensee members which would have made the outcome of an adjudication binding upon them, and that equity jurisdiciton was not properly invoked to enjoin this violation of a criminal statute because plaintiff's conclusory allegations of injury were not enough to meet its burden of demonstrating a public or private nuisance or injury to its property rights, directly traceable to the alleged unlawful conduct of the defendant.

Reversed and dismissed.

Judge BEASLEY partially dissented on the ground that judicial review of justiciable issues should be freely available to obviously interested parties to an action with the least judicial encumbrance. He would find that liquor licensees have a property right in their licenses which would justify equitable intervention on their behalf to enjoin criminal acts which would injure those rights, but concluded, as did the majority, that the plaintiff in this instance was not entitled to such relief because it had failed to make an evidentiary showing of pecuniary damages directly traceable to defendant's allegedly wrongful conduct.

## OPINION OF THE COURT

1. WORDS AND PHRASES—STANDING—INTEREST IN LITIGATION—ADVOCACY.

Standing is the legal term used to denote the existence of a party's interest in the outcome of litigation, an interest that will assure sincere and vigorous advocacy.

2. PARTIES—STANDING—LICENSES—LIQUOR LICENSEES—INTOXICATING LIQUORS—AFFECTED ACTIVITIES.

A nonprofit corporation which was formed for the stated purpose of educating liquor licensees as to their moral, ethical and civic responsibilities does not have legal standing to maintain an action for an injunction to bar a hall which rents its space and furnishes food and soft drinks to its tenants and their guests from profiting from the provision of these goods and services to be used in conjunction with liquor where the corporation itself does not possess a liquor license and is not engaged in any activity which would be affected by the outcome of the litigation.

3. PARTIES—LITIGATION REPRESENTATIVE—CORPORATE PURPOSES—
   STANDING TO SUE.

   A nonprofit corporation consisting of members who are liquor
   licensees may not assert representative legal rights under the
   liquor licenses of its members where the corporation was not
   constituted for representative purposes and where the facts
   indicate that its corporate purpose is unrelated to that of a
   litigation representative.

4. PARTIES—LITIGATION REPRESENTATIVE—BINDING ADJUDICATIONS—
   NOTICE.

   Economic utilization of judicial resources is a principal objective
   of representative litigation; it is therefore paramount that the
   outcome of an adjudication be binding upon those represented;
   those whose rights are to be determined by litigation must be
   given notice of its pendency and an opportunity to participate
   personally or through a class representative.

5. EQUITY—CRIMINAL ACTS—INJUNCTIONS—NUISANCE—CONCLUSORY
   ALLEGATIONS—TRACEABLE INJURY.

   It is a well-established general rule that only in cases of public or
   private nuisance or injury to property rights will equity juris-
   diction be available to enjoin criminal violations; mere conclu-
   sory allegations of injury are insufficient; plaintiff must show as
   a pre-condition to obtaining equitable relief that the injury was
   directly traceable to the alleged unlawful conduct of the de-
   fendant.

PARTIAL DISSENT BY BEASLEY, J.

6. PARTIES—STANDING TO SUE—JUSTICIABLE ISSUES—CLAIM OF RIGHT
   —INTERESTED PARTIES—JUDICIAL ENCUMBRANCE.

   *The law should favor an interpretation which grants standing to
   a party to obtain resolution of an issue where there is a
   genuine justiciable issue raised by that party under a claim of
   right against one who has an interest in contesting it; judicial
   review of justiciable issues should be freely available with the
   least judicial encumbrance.*

7. PARTIES—STANDING TO SUE—LITIGATION REPRESENTATIVE—INTOXI-
   CATING LIQUORS—LICENSES.

   *A nonprofit corporation which was organized, according to its by-
   laws, for the mutual improvement, protection and benefit of its
   liquor licensee members should be granted standing to bring a*

*lawsuit to protect the license interests of those members, even where it does not itself possess such a license.*

8. LICENSES—INTOXICATING LIQUORS—PROPERTY RIGHTS—INJUNCTION —CRIMINAL ACTS.

*Liquor licensees have a property right in their liquor licenses which would justify equitable intervention on their behalf to enjoin criminal acts by a defendant which would injure those property rights.*

9. EQUITY—INJUNCTION—CRIMINAL ACTS—DAMAGE TO PROPERTY RIGHTS—PECUNIARY DAMAGES—BURDEN OF PROOF.

*Injunctive relief is not available to a plaintiff seeking to enjoin a criminal act which he alleges is causing damage to a property right where the plaintiff is unable to make an evidentiary showing of pecuniary damages directly traceable to the alleged unlawful conduct of the defendant.*

10. ACTIONS—DECLARATORY JUDGMENT—STATUTES—INTERPRETATION.

*An action for declaratory judgment is a proper means to seek an authoritative binding interpretation of a statute.*

*Campbell, Kurzman & Plunkett,* for plaintiff.

*Hyman, Gurwin, Nachman, Friedman & Winkleman,* for defendant.

Before: BASHARA, P. J., and BEASLEY and D. E. HOLBROOK, JR., JJ.

BASHARA, P. J. Plaintiff appeals from a trial court judgment granting injunctive relief against defendant, prohibiting certain conduct alleged by plaintiff to be in violation of the Michigan Liquor Control Act.[1] The contention of plaintiff is that the scope of the injunction's prohibition does not enjoin all of the defendant's allegedly unlawful conduct.

Defendant cross-appeals from the judgment. Its primary contention is that plaintiff lacked standing to maintain the action for injunctive relief. To

---

[1] MCLA 436.1, *et seq;* MSA 18.971, *et seq.*

sustain the argument, defendant asserts that plaintiff lacks any interest affected by the alleged unlawful conduct, and that plaintiff has failed to establish any basis upon which equity jurisdiction can be founded. Additionally, defendant contends that the conduct of which plaintiff complains is not violative of § 26c of the act.[2]

This case was submitted to the trial court by stipulation of facts, which were adopted by the trial court. Those facts disclose that the defendant is in the business of operating a catering hall. That facility is rented to various persons and organizations for use in holding wedding receptions, banquets, and similar social gatherings. As part of its business services to those lessees, defendant provides food, a bartender, and assorted nonalcoholic beverages, some of which are used in conjunction with liquor, for an agreed upon price per person.

Any alcoholic beverages consumed on defendant's premises by the lessees or their guests are furnished by the lessees. The lessees purchase the liquor, not from defendant, but from licensees under the act. Defendant does not sell liquor, derives no profit from its sale by others, nor is it licensed to do so under the act.

Proceedings were initiated by plaintiff, a nonprofit corporation whose members are licensees under the act, to enjoin the operation of defend-

---

[2] MCLA 436.26c; MSA 18.997(3). This section states as follows:

"No person shall maintain, operate, lease or otherwise furnish to other persons any premises or place which is not licensed under this act, wherein such other persons may engage in the drinking of alcoholic beverages, for a fee or for any other consideration including the sale of food, mixers, ice or other fluids used with alcoholic drinks or the storage of alcoholic liquors: Provided, That the provisions of this section shall not apply to any hotel nor to any licensee under the provisions of this act: Provided further, That the provisions of this section shall not be construed to repeal or amend the provisions of section 26b of this act."

ant's business insofar as it permitted the consumption of liquor on its premises. Suit was predicated upon allegations that such business activity violates § 26c of the act and injures the property rights of plaintiff's members in their liquor licenses.

Initially, we analyze the defendant's contentions relative to plaintiff's standing to maintain the action and the existence of a basis for equity jurisdiction.

In the context of this case questions of standing and jurisdiction are closely related. Indeed, much of defendant's argument denominated as pertinent to standing is actually aimed at the existence of equity jurisdiction. Therefore, the distinction should be clarified.

Standing is the legal term used to denote the existence of a party's interest in the outcome of the litigation; an interest that will assure sincere and vigorous advocacy. *Sierra Club v Morton,* 405 US 727, 731–732; 92 S Ct 1361, 1364; 31 L Ed 2d 636, 641 (1972). Conceptually, standing was adeptly described by the *Sierra Club* Court in the following terminology:

"Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue. * * * [T]he question of standing depends upon whether the party has alleged such a 'personal stake in the outcome of the controversy,' *Baker v Carr,* 369 US 186, 204, 82 S Ct 691, 703, 7 L Ed 2d 663, as to ensure that 'the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.' *Flast v Cohen,* 392 US 83; 101, 88 S Ct 1942, 1953; 20 L Ed 2d 947." *Id.*

See also *Warth v Seldin,* 422 US 490, 499; 95 S Ct

2197, 2205; 45 L Ed 2d 343, 354 (1975), and *United States v SCRAP,* 412 US 669, 687; 93 S Ct 2405, 2416; 37 L Ed 2d 254, 269 (1973).

Accordingly, the threshold question is whether plaintiff has an interest in the outcome of this litigation sufficient to invoke the controversy-resolving powers of the judiciary. The stipulation of facts discloses that plaintiff does not have a liquor license, nor is it engaged in any commercial activity that will be affected by the outcome of this litigation. As a corporation, a separate legal entity, plaintiff possesses no interest that we are able to discern that confers upon it the requisite standing to maintain this action.

Relying upon *White Lake Improvement Assoc v City of Whitehall,* 22 Mich App 262; 177 NW2d 473 (1970), plaintiff asserts that the commercial interests of its members constitute a sufficient basis to conclude that it has standing as a representative. In the *White Lake* case a non-profit corporation was held to have standing to represent its riparian landowner-members in a suit to enjoin the pollution of a lake. *Id.* at 271–274. This conclusion was obtained notwithstanding that the association itself was not a riparian landowner.

A circumstance in the *White Lake* case that distinguishes it from the facts before us is that the association in the former was constituted for solely representative purposes. *Id.* at 272; 177 NW2d at 477. In the case under review the facts indicate that plaintiff's corporate purpose is unrelated to that of a litigation representative.[3] Further, the

___

[3] Plaintiff's corporate purpose is stated in its articles of incorporation to be as follows:

"Article II—The purpose or purposes of this corporation are as follows: The purpose of educating licensees of the Michigan Liquor Control Commission as to their responsibilities to the public from a moral, ethical and civic standpoint of view and for the purpose of mutual benefit that accrues from such an understanding."

cases[4] upon which *White Lake* was premised involved associations that acted as a class representative or sought to establish rights in which they had a direct interest, or without which their existence would terminate.[5] None of these factors characterize plaintiff's position in the instant litigation.

More importantly, since economic utilization of judicial resources is a principal objective of representative litigation, it becomes paramount that the outcome of the adjudication be binding upon those represented. Consistent with our conception of procedural due process, this imports that those whose rights are to be determined by litigation be given notice of its pendency and an opportunity to participate personally or through a class representative. See, *e.g., Mullane v Central Hanover Bank & Trust Co,* 339 US 306, 313; 70 S Ct 652, 656; 94 L Ed 865, 872–873 (1950).

The stipulation of facts indicates that plaintiff does not know whether any of its members has knowledge of the pendency of this litigation. Concomitantly, if plaintiff seeks to adjudicate the alleged property interests of its members by this action, the binding effect upon its members under the foregoing principle would be tenuous, at best. Consequently, since the plaintiff has neither a direct interest in the cause of action nor a properly constituted representative position, we must conclude that the requisite standing to pursue this litigation is absent.

---

[4] *See White Lake Improvement Assoc v City of Whitehall,* 22 Mich App 262, 273–274 and fn 12 and 14; 177 NW2d 473, 477–478 (1970).

[5] For example, in the cases reported in *White Lake,* at 274, fn 14 the association brought suit as a class action in *Smith v Board of Education of Morrilton School District No 32,* 365 F2d 770, 777 (CA 8, 1966), and litigated rights essential to its organizational existence or in which it had a direct interest, in the cases of *Louisiana v NAACP,* 366 US 293, 294; 81 S Ct 1333, 1334; 6 L Ed 2d 301, 303 (1961), and *NAACP v Button,* 371 US 415, 428–429; 83 S Ct 328, 335; 9 L Ed 2d 405, 415 (1963), respectively. *See also NAACP v Alabama,* 357 US 449, 459; 78 S Ct 1163, 1170; 2 L Ed 2d 1488, 1489 (1958).

Should plaintiff establish standing to maintain this action by assuming a proper representative status,[6] under the facts shown by the record, equitable relief would nevertheless remain unavailable. Such result would obtain because of the absence of any grounds upon which the invocation of equity jurisdiction can be founded. Even if a party has standing to maintain a suit for injunctive relief, he must additionally allege *and* establish a basis for equity jurisdiction.

Violations of the act are, by the terms of § 50, deemed to be crimes.[7] As a well-established general rule, only in the cases of public or private nui-

---

[6] One means of instituting representative litigation is provided by the court rule governing class actions. *See* GCR 1963, 208. This rule enables the court to assure that all those who are to be bound by the judgment receive proper notice of the litigation. Rule 208.4 provides:

"Protective Orders. The court at any stage of an action under subrules 208.1 or 208.2 may require such security and impose such terms as shall fairly and adequately protect the interests of the class or association in whose behalf the action is brought or defended. It may order that notice be given, in such manner as it may direct, of the pendency of the action, of a proposed settlement of entry of judgment, or any other proceedings in the action, including notice to the absent persons that they may come and present claims and defenses if they so desire. Whenever the representation appears to the court inadequate fairly to protect the interests of absent persons who may be bound by the judgment, the court may at any time prior to judgment order an amendment of the pleadings, eliminating therefrom all reference to representation of absent persons, and the court shall order entry of judgment in such form as to affect only the parties to the action and those adequately represented."

[7] MCLA 436.50; MSA 18.1021, which states as follows:

"PENALTIES. Any person, other than persons required to be licensed under this act, who shall violate any of the provisions of this act shall be guilty of a misdemeanor.

"Any licensee who shall violate any of the provisions of this act, or any rule or regulation of the commission promulgated hereunder, shall be guilty of a misdemeanor, punishable by imprisonment in the county jail not more than 6 months or by a fine of not more than 500 dollars, or both, in the discretion of the court.

"Any person, who shall do any act for which a license is required under this act without first obtaining said license or any person who shall sell any alcoholic liquor in any county which shall have prohibited the sale of alcoholic liquor under the provisions of section 57 hereof, shall be guilty of a felony, punishable by imprisonment in the

sance or injury to property rights will equity jurisdiction be available to enjoin criminal violations. See *e.g. State ex rel Washtenaw County Prosecuting Attorney v Western Union Telegraph Co,* 336 Mich 84, 90; 57 NW2d 537, 540 (1953), *Glover v Malloska,* 238 Mich 216, 220; 213 NW 107, 108 (1927), *Village of St Johns v McFarlan,* 33 Mich 72; 20 AR 671 (1875). No allegations of nuisance were made by plaintiff, nor does the act declare violations to be a nuisance. However, the interests of plaintiff's members in their liquor licenses may constitute sufficient property rights to invoke equity jurisdiction. But we need not decide that issue.

Assuming, *arguendo,* the existence of standing and property rights, the record is devoid of any evidentiary basis for finding that defendant's alleged violations of the act resulted in any injury to those interests. Mere conclusory allegations are insufficient. Plaintiff must show, as a pre-condition to obtaining equitable relief, that the injury was "directly traceable" to the alleged unlawful conduct of defendant. *Glover v Malloska, supra* at 221.

This requirement of direct traceability was reasserted in *United-Detroit Theaters Corp v Colonial Theatrical Enterprise Inc,* 280 Mich 425, 430–431; 273 NW 756, 757 (1937). There, the Supreme Court reversed an order for injunctive relief because the record failed to show an injury to plaintiff's property interest in their business. *Id.*

Accordingly, we conclude that the trial court

state prison not more than 1 year or by a fine of not more than 1,000 dollars, or both, in the discretion of the court.

"It is the intent of the legislature that the court, in imposing punishment under the provisions of this section, should discriminate between casual or slight violations and habitual sales of alcoholic liquor or attempts to commercialize violations of this act or any of the rules or regulations of the commission promulgated hereunder."

erred in granting injunctive relief to the plaintiff. Further, it is our conclusion that the action should have been dismissed because plaintiff lacked standing to maintain the suit. Consequently, we need not reach an evaluation of the trial court's interpretation of § 26c of the act.

Reversed and dismissed. Costs to defendant.

D. E. HOLBROOK, J., concurred.

BEASLEY, J. *(dissenting).* I respectfully dissent.

In this case, plaintiff seeks interpretation of MCLA 436.26c; MSA 18.997(3), which provides:

"No person shall maintain, operate, lease or otherwise furnish to other persons any premises or place which is not licensed under this act, wherein such other persons may engage in the drinking of alcoholic beverages, for a fee or for any other consideration including the sale of food, mixers, ice or other fluids used with alcoholic drinks or the storage of alcoholic liquors: Provided, That the provisions of this section shall not apply to any hotel nor to any licensee under the provisions of this act: Provided further, That the provisions of this section shall not be construed to repeal or amend the provisions of section 26b of this act."

Even a cursory reading of the above statute reveals plenty of room for differing interpretations. In a nutshell, plaintiff claims the statute prohibits unlicensed persons from furnishing premises for a fee where others engage in drinking alcoholic beverages on the premises.

Defendant says, an unlicensed person may furnish premises and food, including ice, mix and pop to another for a fee where the second person permits drinking of alcoholic beverages on the premises. An authoritative, binding interpretation of the statute should be made to resolve this issue.

Both at trial and on appeal, defendant urges that plaintiff is an improper party and lacks standing to bring this action. Defendant argues that violations of the Liquor Control Act are a crime, that plaintiff's position is essentially that defendant violates the Liquor Control Act by permitting and promoting liquor to be served in premises rented for a fee, that criminal activity may only be enjoined where it is either a public or private nuisance or where injury is caused to the property rights or pecuniary interests of another; that plaintiff does not have property rights in or pecuniary interests arising from a license, that, in addition, under the primary jurisdiction doctrine, administrative remedies in the Liquor Control Commission must first be exhausted, and that plaintiff nonprofit association is a separate entity distinct from its members, pays no taxes, and does not and cannot suffer injury because of defendant's operations. Defendant concludes that plaintiff lacks standing to bring this action.

The trial court rejected defendant's claim that plaintiff lacked standing, finding that, under *Bundo*[1] and *Bisco's*,[2] plaintiff's members possessed valuable property rights in their liquor licenses. The trial court reasoned that since a property right was involved, violations of the Liquor Control Act could be enjoined as private nuisances. The trial court rejected defendant's argument that bringing this suit was *ultra vires* under plaintiff's articles of incorporation, indicating this suit was for the purpose of mutual benefit. The trial court also declined to apply the doctrine of primary jurisdiction in the Liquor Control Commission to the facts of this case.

---

[1] *Bundo v Walled Lake,* 395 Mich 679; 238 NW2d 154 (1976).

[2] *Bisco's, Inc v Liquor Control Commission,* 395 Mich 706; 238 NW2d 166 (1976).

In analyzing the standing issue, I would start
with the proposition that where, as here, there is a
genuine justiciable issue, that is, the assertion of a
claim of right against one who has an interest in
contesting it,[3] the law should favor that interpreta-
tion which grants standing to obtain resolution of
the issue. Judicial review of justiciable issues
should be freely available with the least judicial
encumbrance.[4]

The justiciable issue is, does § 26c of the liquor
law prohibit defendant from performing the acts
delineated in the stipulated facts?[5]

If standing is denied plaintiff, then who can
raise the question as to whether defendant's busi-
ness is in violation? It is assumed that the police
agencies listed in the statute are empowered to see
that the law is enforced. It would also be assumed
that a liquor licensee who was in economic compe-
tition with this unlicensed defendant would have
standing to seek determination of whether this
defendant is in violation of the liquor control law.[6]
But, plaintiff is neither. Plaintiff is a nonprofit
corporation holding no liquor license of its own,
but representing some 2,902 licensees statewide.

On appeal, the majority conclude that plaintiff
lacks "standing" to bring this action. In Michigan,
the leading case dealing with the subject of stand-
ing is *White Lake Association v Whitehall*.[7] In
that case, Judge (now Justice) LEVIN indicated that
the standing of nonprofit corporations to challenge

---

[3] Black's Law Dictionary (4th ed), p 1004.

[4] *See,* 75 Harvard L Rev 255, 257–258 (1961), citing *FCC v Sanders Brothers Radio Station,* 309 US 470; 60 S Ct 693; 84 L Ed 869 (1940).

[5] MCLA 436.26c; MSA 18.997(3).

[6] *Kirkby v Public Service Commission,* 320 Mich 608; 32 NW2d 1 (1948), *In re Azarewicz,* 163 Pa Super 459; 62 A2d 78 (1948).

[7] *White Lake Improvement Association v City of Whitehall,* 22 Mich App 262; 177 NW2d 473 (1970).

proposed action of administrative agencies has been recognized. Among other things, he said:

"No constructive purpose would be served by requiring the members of the plaintiff association who are riparian owners to maintain this action individually and thereby require that they seek in some other fashion financial and other support from the other affected landowners. Additionally, allowing the landowners to associate together for this purpose may avoid a multiplicity of suits; the difficulties that are likely to be encountered where there are a large number of plaintiffs are all too familiar to anyone who has had experience in such litigation. The most expedient way for the riparian owners to obtain a determination on the merits is to allow them to combine and join together for this purpose with others of a like interest under a single banner both before and at the time of suit;

\* \* \*

"In other cases as well it has been recognized that a nonprofit corporation may have standing to maintain an action to vindicate the interests of its members." (Footnote omitted.)[8]

The majority undertake to distinguish the within case from the *White Lake* case, saying that in the *White Lake* case the nonprofit association was constituted for solely representative purposes, while the corporate purpose of plaintiff nonprofit corporation is unrelated to that of a litigation representative.

Plaintiff was formed as a nonprofit corporation in 1946. Article II of the articles of incorporation provided:

"The purpose or purposes of this corporation are as follows: The purpose of educating licensees of the Michi-

---

[8] *Id.* at pp 272–273.

gan Liquor Control Commission as to their responsibilities to the public from a moral, ethical and civic standpoint of view and for the purpose of mutual benefit that accrues from such an understanding."

The by-laws of plaintiff provide, among other things, as follows:

"Therefore, we, the Michigan Licensed Beverage Association, pledge ourselves to labor unitedly in behalf of the following principles:

"1. To affiliate all licensees into one state organization.

"2. To establish and perpetuate an organization for the purpose of mutual improvement, protection and benefit to promote a moral, social, intellectual improvement of the liquor licensees of the State of Michigan.

"3. To encourage, sustain and assist in the just and equitable enforcement of laws, and in the effort to defeat oppressive legislation, to promote beneficial legislation, and to maintain and support the objects of the organization."

For this nonprofit corporation to attempt to secure a binding adjudication as to whether catering halls, like defendant, must obtain liquor licenses would seem clearly to be for the "mutual improvement, protection and benefit" of its members and, thus, not outside the contemplation of the articles of incorporation and by-laws of plaintiff.

Under these circumstances, the bringing of the within cause of action by plaintiff does not appear to be an *ultra vires* action.

Contrary to the majority, I would incline to believe that, for the same reasons delineated in *White Lake Association, supra,* plaintiff has standing to bring this action. The majority suggest that since plaintiff does not hold a liquor license and,

thus, has no direct interest in the outcome of this litigation, equitable relief is not available for plaintiff. However, the members of plaintiff non-profit corporation do have a direct interest in the outcome of this litigation.

Judicial notice is taken that there is direct economic competition between the liquor licensees who comprise plaintiff and catering halls similar to defendant. In the within case, the form of relief sought by plaintiff is in reality twofold; a sweeping injunction to enjoin "Defendant from operating his establishment in violation of the Michigan Liquor Control Act", and, implicitly, a declaration that the interpretation of § 26c of the liquor statute urged by plaintiff is correct.

The majority say that since violations of the liquor statute are punishable as criminal acts, injunctive relief is only available if public or private nuisance or injury to property rights is established. They maintain that there has been no such showing in the within case.

To the contrary, I would conclude that the members of plaintiff have a property right in their liquor licenses,[9] that that property right would be injured by violations of the liquor control law and that plaintiff represents its members in seeking to prevent such injury.

However, with the majority, I would acknowledge that plaintiff in the within case has apparently made no evidentiary showing of pecuniary damages "directly traceable" to the alleged unlawful conduct of defendant.[10] Without a showing of direct traceability, injunctive relief is not available

[9] *Bundo, supra* and *Bisco's, supra.*

[10] *Glover v Malloska,* 238 Mich 216; 213 NW 107 (1927), *United-Detroit Theaters Corp v Colonial Theatrical Enterprise, Inc,* 280 Mich 425; 273 NW 756 (1937).

to plaintiff. Therefore, I would agree with the majority that injunctive relief was not proper in the within case on the facts indicated in the record. However, I would treat plaintiff's cause as an action for declaratory judgment[11] and would find standing in plaintiff to seek an authoritative, binding interpretation of § 26c of the Liquor Control Act as it relates to the allegedly unlawful activities of defendant. I would address that issue as to the statute's meaning; but since this is a dissent, no good purpose will be served by further comment.

[11] GCR 1963, 521, *Kuhn v East Detroit,* 50 Mich App 502, 504; 213 NW2d 599 (1973).