**In the Matter of the GREAT AMERICAN INSURANCE COMPANY.**

**No. C2–87–640.**

Court of Appeals of Minnesota.

Sept. 29, 1987.
Review Denied Nov. 13, 1987.

Thomas E. Harms, Hessian, McKasy & Soderberg, Minneapolis, for relator Great American Ins. Co.

Hubert H. Humphrey, III, Atty. Gen., John C. Bjork, Sp. Asst. Atty. Gen., St. Paul, for respondent Dept. of Commerce.

Heard, considered and decided by POPOVICH, C.J., and NORTON and LOMMEN,* JJ.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. 6, § 2.

## OPINION

A. PAUL LOMMEN, Judge.*

This appeal is from an order of the Commissioner of Commerce determining respondent had committed four separate violations of Minn.Stat. § 72A.20, subd. 12a and one violation of Minn.Stat. § 72A.20, subd. 12. Relator insurance company claims the Commissioner of Commerce erred because (1) there was no factual basis for finding a "general business practice" sufficient to support any violations of Minn.Stat. § 72A.20, subd. 12, and (2) there was no factual or legal basis for finding relator had not met the requirement of either Minn.Stat. § 72A.20, subd. 12 or 12a because relator's alleged failure to respond to its insured's initial claim for wage loss benefits came at a time when neither relator, its insured or its insured's attorney, knew that a claim for the specific benefits eventually paid even existed.

## FACTS

Insured, Betty Maki, was injured in an automobile accident on August 6, 1985. She notified her insurer, relator Great American Insurance Company, of her claim on August 8, 1985, and was then informed by relator of potentially recoverable damages, including automobile property damage, medical fees, and wage losses. Relator also told insured that she was covered if they could verify her losses and stated "her claim would be honored."

Relator further indicated it would mail to insured certain insurance forms to be completed. The purpose of these forms was to verify what, if any, wage loss was sustained and what wage loss might be incurred in the future.

Relator received the written application for wage loss benefits from insured's attorney on August 23, 1985. Three days later, relator received its "wage and salary verification" form from insured's employer, St. Louis County, Minnesota. St. Louis County indicated the insured was paid $408.29 for the week following the accident and the potential for a continued absence was not known.

On September 9, 1985, relator received a letter from insured's attorney which stated "[insured] is still out of work; therefore she should be receiving PIP benefits. I would appreciate you seeing that she does receive these." Enclosed with the letter was a letter from insured's doctor stating she could not return to work "until further notice."

Relator's claim representative stated that upon receipt of the September 9, 1985 letter she did not respond because she believed it was unnecessary. When relator did not respond, insured's attorney sent a second letter on September 18, 1985, stating his client has "been patiently waiting to receive her PIP benefits. I would appreciate hearing from you immediately as to why these payments are not being made." Relator's claims representative testified she did not believe this letter created any reasonable necessity for a response because she had communicated all of the information known to her to the insured and assumed the insured was keeping her attorney advised of all information and benefits paid.

On October 1, 1985, insured's attorney filed a formal complaint with the Commerce Department regarding relator's handling of insured's claim. The department then sent appellant a copy of the complaint, which it received on October 21, 1985.

The next day, relator telephoned St. Louis County and discovered the insured was out of work and had, as of that date, lost no wages because St. Louis County was continuing to pay her out of a special sick leave account.

On October 28, 1985, relator sent a new wage and salary verification form to St. Louis County which relator received back on November 11, 1985. In the meantime, relator received a letter from insured's attorney, dated October 25, 1985, which stated:

> Enclosed is a report from Betty J. Maki's physician, Dr. Joseph Davis, stating that Mrs. Maki will be unable to return to work until November 20, 1985. As I told you, Mrs. Maki is not working, and this statement certifies to that; for these rea-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn.Const.Art. 6, § 2.

sons I insist that you begin making payment to Mrs. Maki for her wage loss benefits.

On October 24, 1985, the supervisor of relator's agent wrote the Commerce Department investigator indicating:

It is not until this recent communication from the attorney that we got a full explanation as to the continued wage payments by the employer. We are now attempting to verify with the employer the fact that this continuing wage payment is actually affecting her future benefits and therefore would be something that we owe her under the wage loss benefit under her policy with Great American.

On November 19, 1985, relator wrote to the Commerce Department stating it was still attempting to determine under what plan or benefit, if any, the continuing wage loss was being paid.

On November 25, 1985, relator's representative called St. Louis County and determined the amount of time Mrs. Maki had lost from work and her sick leave reserve. On the same day, relator finally completed its investigation and agreed to reimburse insured for her income loss benefits.

Relator ultimately paid the claim on December 2, 1985, without any accrued interest required by Minn.Stat. § 65B.54 (1986). Interest on this claim was not ultimately paid until after insured's attorney initiated a further demand which was honored on May 22, 1986.

Insured ultimately used 540 hours of sick leave. When she returned to work, her sick leave balance was only 51.5 hours. In a letter dated November 25, 1985, from St. Louis County to relator's agent, the county explained the depleted hours from insured's sick leave reserve fund would effect her future benefits upon retirement.

The matter came before the administrative law judge (ALJ) on October 21, 1986, with the record closed on December 2, 1986. On December 31, 1986, the ALJ made his findings of fact, conclusions and recommendation.

The ALJ concluded that the August 8, 1985 telephone conversation did not constitute an affirmation or acceptance of the wage loss claim. There was no violation of the "unfair service" requirements of Minn. Stat. § 72A.20, subd. 12 because there was no evidence relator regularly delays payments "with such frequency to constitute a general business practice." However, relator failed to respond to insured's communications within 10 days; failed to inform claimant of acceptance or denial of the claim within 30 business days after notification of claim; failed to advise insured of its final decision accepting or denying the claim within 60 business days of a properly executed proof of loss, which are all unfair settlement practices. The ALJ also found relator failed to pay interest on insured economic loss, and concluded relator is subject to disciplinary action.

On February 27, 1987, the respondent, Commissioner of Commerce, concluded that contrary to the ALJ, the commission of multiple acts is not necessary to take administrative action against violations of Minn.Stat. § 72A.20, subd. 12 as incorporated in and pursuant to subdivision 12a of the same statute.

Respondent agreed with the remainder of the ALJ's findings and issued a cease and desist order upon relator and imposed a civil penalty of $5,000 pursuant to Minn. Stat. § 72A.23, subd. 1(b) (1986).

### ISSUES

1. Did the Commissioner of Commerce err in determining violations of Minn.Stat. § 72A.20, subd. 12 (1986) do not require a showing of a "general business practice" when the suit is initiated by the Commissioner?

2. Are the conclusions of the Commissioner of Commerce regarding violations of Minn.Stat. § 72A.20, subd. 12a (1986) unsupported by substantial evidence in the record?

3. Did the Commissioner of Commerce miscalculate civil penalties under Minn. Stat. § 72A.23, subd. 1(b) (1986)?

## ANALYSIS

1. The scope and standard of review of respondent's order is found in Minn.Stat. § 14.69 (1986), which provides a court may reverse or modify an agency's decision if it is:

   a. In violation of constitutional provisions; or

   b. In excess of the statutory authority or jurisdiction of the agency; or

   c. Made upon unlawful procedure; or

   d. Affected by error of law; or

   e. *Unsupported by substantial evidence in view of the entire record as submitted;* or

   f. Arbitrary or capricious.

*Id.* (emphasis added); *see Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 827 (Minn. 1977).

■ 2. Relator claims respondent committed an error of law by concluding a violation of Minn.Stat. § 72A.20, subd. 12(2) need not be supported by substantial evidence of relator's general business practice. Minn.Stat. § 72A.20, subd. 12(2) provides:

> **Unfair Service.** Causing or permitting with such frequency to indicate a general business practice any unfair, deceptive, or fraudulent act concerning any claim or complaint of an insured or claimant including, but not limited to, the following practices:
>
> \*   \*   \*   \*   \*   \*
>
> (2) failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies \* \* \*.

*Id.* Minn.Stat. § 72A.20, subd. 12a provides in part:

> **Claims settlement. (a) Administrative enforcement.** The commissioner may, in accordance with chapter 14, adopt rules to insure the prompt, fair, and honest processing of claims and complaints. The commissioner may, in accordance with sections 72A.22 to 72A.25, seek and impose appropriate administrative remedies, including fines, for (1) a violation of this subdivision or the rules adopted pursuant to this subdivision; or

> (2) a violation of subdivision 12. *The commissioner need not show a general business practice in taking an administrative action for these violations.* \* \*

*Id.* (emphasis added).

Relator argues to find a violation under subdivision 12 the party must show a frequency of unfair service indicating a general business practice. In other words, an individual must show more than an isolated incident.

The Administrative Law Judge (ALJ) concluded a violation of subdivision 12 requires a showing of a general business practice. Furthermore, the ALJ concluded that since both provisions utilize different standards, they should be read independently.

Relator contends the better reasoned analysis requires an independent reading of both subdivisions. Relator cites Minn.Stat. § 645.16 (1986) which states every law shall be construed, if possible, to give effect to all its provisions. Thus relator claims respondent's construction of subdivisions 12 and 12a would never require the Department of Commerce to prove a general business practice.

Relator further supports the requirement of a general business practice by citing *Morris v. American Family Insurance Co.,* 371 N.W.2d 620 (Minn.Ct.App.1985), *rev'd,* 386 N.W.2d 233 (Minn.1986). There, this court held an insured could plead a claim under the Unfair Services Act but was obligated to prove the existence of a general business practice "as opposed to an inadvertent occurrence." 371 N.W.2d at 623. Upon review of the *Morris* decision, the Minnesota Supreme Court reversed this court's determination that the Unfair Services Act creates a private cause of action. The supreme court did, however, cite with approval our rationale regarding the "general business practices standard." Specifically, the court stated:

> The plain language in subdivision 12 suggests that a single isolated violation of the Act is not actionable, and the court of

appeals, consistent with those cases addressing the issue so held.

*Morris*, 386 N.W.2d at 237 n. 6.

Furthermore, relator contends a recent federal authority provides that under subdivision 12, an individual must show multiple violations of the Unfair Claims Practices Act to satisfy the "general business practice" standard. *United States Liability Insurance Co. v. Johnson & Lindberg, P.A.*, 617 F.Supp. 968, 976 (D.Minn.1985).

Relator therefore argues since respondent produced no evidence of general business practice, respondent has incorrectly found a violation of Minn.Stat. § 72A.20, subd. 12 and his decision should be reversed.

We disagree. Relator's reliance on *Morris* and *Johnson & Lindberg* is misplaced and its interpretation of the statute is erroneous. In both *Morris* and *Johnson & Lindberg*, the *insured* instituted the action, not the Commissioner of Commerce. It is true an individual must comply with the "general business practice" standard of Minn.Stat. § 72A.20, subd. 12, but not the Commissioner of Commerce.

Minn.Stat. § 72A.20, subd. 12a expressly provides the Commissioner may commence disciplinary action against an insurer for:

> (1) a violation of this subdivision or the rules adopted pursuant to this subdivision; or
>
> (2) a violation of subdivision 12. The commissioner need not show a general business practice in taking administrative action for these violations.

*Id.*

Furthermore, the legislative history of Minn.Stat. § 72A.20, subd. 12a indicates the "general business practice" language of subdivision 12 effectively prohibited the Department of Commerce from bringing administrative actions against insurance companies, and that was one of the reasons why subdivision 12a was added. *See* Hearings on S.F. 1862 Before the Senate Economic Development & Commerce Committee, at AA 150 (March 28, 1984).

As quoted from legislative history:

Representative Kelley:

An individual would have to show that it is a general business practice but the Department, if I went through the Department, does not have to show there is a general business practice but it could take an administrative action based upon one individual.

Commissioner:

Mr. Chairman and Representative Kelley, correct.

*Id.* We therefore affirm the Commissioner's determination the Commerce Department need not comply with the "general business practice" standard for violations of Minn.Stat. § 72A.20, subd. 12.

3. Relator claims violations of Minn.Stat. § 72A.20, subds. 12a(d)(3) & (11) are not supported by substantial evidence. Those subdivisions provide:

\* \* \* \* \* \*

(d) **Standards for claim filing and handling.** The following acts by an insurer, an adjuster, a self-insured, or a self-insurance administrator constitute unfair settlement practices:

\* \* \* \* \* \*

(3) unless provided otherwise by law or in the policy, failing to complete its investigation and inform the insured or claimant of acceptance or denial of a claim within 30 business days after receipt of notification of claim unless the investigation cannot be reasonably completed within that time. In the event that the investigation cannot reasonably be completed within that time, the insurer shall notify the insured or claimant within the time period of the reasons why the investigation is not complete and the expected date the investigation will be complete. For claims made under a health policy the notification of claim must be in writing;

\* \* \* \* \* \*

(11) failing, within 60 business days after receipt of a properly executed proof of loss, to advise the insured of the acceptance or denial of the claim by the insurer. No insurer shall deny a claim on the grounds of a specific policy provision, condition, or exclusion unless refer-

ence to the provision, condition, or exclusion is included in the denial. The denial must be given to the insured in writing with a copy filed in the claim file * * *. *Id.* Relator claims the conclusions of respondent are directly contrary to the evidence because relator's claims adjuster called the insured one day after the accident and agreed to pay insured's claim.

Relator further claims there is no evidence of negligence on its part for failure to investigate a claim for lost sick leave because the insured stated her claim was for lost wages not lost sick leave benefits. Furthermore, relator argues they were not informed of the existence of insured's sick leave account until October 22, 1985.

We disagree. Agency decisions enjoy a presumption of correctness, and deference should be shown by the courts to the agency's expertise and special knowledge. *Herbst*, 256 N.W.2d at 824. Thus, respondent's order comes to this court with a presumption of regularity out of deference to his skill and expertise. *Minnesota Life and Health Insurance Guaranty Association v. Minnesota Department of Commerce*, 400 N.W.2d 769, 773 (Minn.Ct.App. 1987). Interpretations of the substantial evidence test require such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and more than some or any evidence. *Herbst*, 256 N.W.2d at 825.

Relator received notification of the insured's claim for income loss benefits on August 8, 1985. Thus it had 30 business days to September 23, 1985, to inform insured of acceptance or denial of claim. However appellant waited until October 22, 1985, to make its next contact with insured or her attorney about her claim for income loss.

We find substantial evidence supporting the conclusion that the August 8, 1985 phone conversation between insured and relator did not constitute an acceptance of insured's claim. Relator merely acknowledged insured's claim would be honored subject to further investigation.

Further, we find substantial evidence supporting relator's violation of subdivision

12a(d)(11). Relator received proof of loss on August 26, 1985. Thereafter, relator did not advise insured of acceptance or denial of the claim until December 2, 1985, more than 60 business days later.

█ 4. Additionally, we find relator violated Minn.Stat. § 72A.20, subd. 12a(d)(2), which lists an unfair settlement practice as:

> failing to reply, within ten business days of receipt, to all other communications about a claim from an insured or a claimant that reasonably indicate a response is requested or needed * * *.

*Id.* Relator argues the September 9, 1985 letter did not reasonably require a response. We find this argument without merit. The letter reasonably raised a question relator should have answered. We also agree with the Commissioner relator violated Minn.Stat. § 72A.20, subd. 12(2), which provides unfair service is:

> failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

*Id.* Relator received two letters dated September 9, 1985 and September 18, 1985. We agree both communications reasonably required a response and relator failed to act promptly.

█ 5. Relator argues the calculation of civil penalties is in excess of the maximum amount permitted by Minn.Stat. § 72A.23, subd. 1(b). That subdivision provides in part:

> If * * * the person complained of has engaged in * * * [a] practice, in violation of sections 72A.17 to 72A.32 the commissioner * * * may impose a civil penalty of not more than $2,000 for each offense.
>
> \*     \*     \*     \*     \*     \*

*Id.*

Relator claims that pursuant to Minn. Stat. § 65B.54, subd. 1 (1986) a payment is not overdue until the expiration of 30 days after the insurer receives "reasonable proof of the fact and amount of loss realized." *Id.* Relator asserts it did not receive proof of insured's lost sick pay claim until November 25, 1985, and that claim

was paid on December 2, 1985. Therefore, since relator's payment was not overdue, no interest payment was required and no penalty can be assessed.

Relator further asserts the calculation of civil penalties was improper because it was based almost entirely on evidence outside the record. We disagree. We find relator had the necessary documentation to process the claim on August 23, 1985. To the extent there was subsequent confusion, as the letters indicated, relator should have then made the phone call it finally made on November 25, 1985.

### DECISION

The Commissioner of Commerce did not err in determining the Department of Commerce need not show a "general business practice" for violations of Minn.Stat. § 72A.20, subd. 12 when the suit is initiated by that department. Similarly, there is substantial evidence in the record to support the violations under Minn.Stat. § 72A.20, subds. 12 and 12a. Furthermore, the Commissioner did not miscalculate the civil penalty under Minn.Stat. § 72A.23, subd. 1(b).

Affirmed.